The Chancellor.
The bill is filed for the foreclosure and sale of mortgaged premises. The only matter of dispute is between the complainant and Abraham Cruser, who sets up a judgment prior in date to the mortgage.
The mortgaged premises formerly belonged to Benjamin Vanldrk. While he was the owner, Samuel Terhune recovered against him the judgment in question. Subsequent to the judgment, Vankirk executed the mortgage now held by the complainant.
The mortgage was given to secure the payment of $500. It was executed by Vankirk and wife to Charles II. Stout, on the 11th of May, 1846. On the next day, Charles II. Stout paid off the judgment, which was a lien on the mortgaged promises, and took an assignment of it from Samuel Terhune. The title to the mortgage and the judgment thus became united in Charles H. Stout.
Charles II. Stout sold both the mortgage and judgment to the complainant for a full consideration. The mortgage was formally assigned, by endorsement under hand and seal, and the bond was delivered with the mortgage to the complainant. There was no assignment of the judgment. The reason given by Charles H. Stout, why it was not assigned, is, that the squire did not know how to draw the assignment. But, he says, it was “paid,” by him, over to his brother, with the bond and mortgage. The proof is very satisfactory that the complainant was the bona fide owner of both the bond and the mortgage, and that he paid for them the full amount due upon them. *80 The bond, the mortgage, and the assignment of the judgment from Terhune to Charles H. Stout were all in the possession of the complainant, as the evidences of his ownership.
In March, 1849, Benjamin Vankirk and Theodore H. Heed agreed to exchange some land between them, but the judgment held by complainant being a lien upon Vankirk’s property, he could not give a clear title. It was agreed that the judgment should be satisfied by Heed’s conveying his lot to Jacob Stout. In conformity to this arrangement, Vankirk and wife conveyed his lot to Theodore H. Heed; Heed conveyed his lot to Jacob Stout, the complainant, and Charles H. Stout, instead of cancelling the judgment, released to Heed the premises conveyed to him. The next we find of the formal assignment of the judgment executed by Terhune to Charles H. Stout (and which assignment all the parties seemed to regard as a kind of title deed) is in the hands of Benjamin Vankirk, the judgment debtor. All these facts are very satisfactorily proved, and the whole evidence establishes, beyond a question, that the debtor paid the judgment in the exchange between himself and Heed.
Subsequent to this, Charles II. Stout, by his assignment under his hand and seal, assigned the judgment to Abraham Crusei’, who now sets it up, and claims priority over the complainant’s mortgage.
A judgment creditor, or his assignee, cannot, after the judgment has been paid in any way, give it vitality against the judgment debtor, and, of course, not against his creditors. The assignee takes it subject to all the equities between the original parties. If, then, Charles H. Stout had assigned the judgment to Cruser, and received from him the consideration, it would have been a fraud on the part of Stout. The sufferer would be Cruser, and not the debtor or any other third innocent party.
Nor can the debtor himself) after he has paid the judgment, in any way revive it against a bona fide, mortgage *81 or judgment creditor, who had a lien at the time of payment, or acquired prior to the act of the debtor, by which it is sought to affect his lien. Payment by the debtor operates for the benefit, and as a release in favor of creditors having liens on the same fund bound by the judgment. Bolles v. Wade and others, 3 Gr. 458. Whether, therefore, Cruser purchased the judgment of Charles H. Stout or of Benjamin Vankirk, can make no difference, as far as the rights of the complainants are concerned. In neither case can the judgment be interposed to affect his mortgage.
But, in justice to Charles II. Stout, the ease ought not to be left here. The evidence shows that no fraud is to be imputed to him, and that if Cruser is a sufferer, he has no one to blame but himself and Benjamin Vankirk.
Charles H. Stout did not receive one farthing for the assignment. Cruser does not pretend, in his answer, that he paid the money to Stout. .Tie alleges he paid the money to Vankirk, who delivered to him the assignment. If the statement of the transaction in the answer is true, Vankirk obtained the money from Cruser through fraud and false pretences. Mr. Cruser cannot be regarded as entirely innocent in the transaction. Both the Stouts were within his call. If he had have made application to either of them, as he was bound to do, he would not have become involved in the difficulty. lie chose to rely upon the assurances of 'Vankirk, and he must submit to the consequences. It is true Vankirk produced an assignment from Stout to Cruser, which, on the face of it, was an assurance, upon Stout’s part, that everything was correct. But Vankirk acted as Stout’s agent in procuring that assignment. The evidence shows he procured it fraudulently. It is right therefore, as between these parties, that Cruser should be the sufferer.
The complainant’s mortgage is entitled to priority over the judgment. If there are no other creditors whose rights are affected, an account may be taken on the judg *82 meat. As Cruser paid the money to Vankirk, it is equitable that, as between them, the judgment should stand as valid.