Traphagen v. Lyons.

ALBERT D. TRAPHAGEN et al., appellants,

v.

LEWIS J. LYONS et al., respondents.

1. When a judgment once paid, but not satisfied of record, is assigned by the judgment creditor, the assignee takes it subject to all defences and equities which the judgment debtor had against the assignor.

2. If the judgment is purchased and the assignment taken at the request of the judgment debtor, and on his representation that it is a valid and subsisting judgment, and this revives the judgment, such revival will be effectual upon the judgment debtor, but will have no effect as against encumbrancers whose liens have intervened between the judgment and its assignment.

3. Although the assignee is a purchaser for value, in good faith and without notice, such encumbrancers are entitled to equitable relief against the judgment which, as to them, has been paid and satisfied. In such a case, the doctrine protecting *bona fide* purchasers without notice has no application.

On appeal from the court of chancery. The opinion of the chancellor is reported in *Traphagen* v. *Hand, 9 Stew. Eq. 384.*

*Mr. John Whitehead* and *Mr. H. C. Pitney,* for appellants.

*Mr. John R. Emery,* for respondents.

The opinion of the court was delivered by

MAGIE, J.

Appellants, holding judgments against Israel D. Condit, which were liens upon some of his lands, filed their bill against respondents and others. They therein alleged, amongst other things, that Samuel W. Torrey had, before the date of their judgments, and on May 6th, 1874, recovered a judgment against Condit, which was a lien on the same lands; that the judgment was paid and satisfied in full by Condit to Torrey, and, in fact, that Torrey's claims, on which the judgment was founded, had been

paid before its entry, and that the judgment had been assigned by Torrey to Lewis J. Lyons or Owen McCabe, or one of them, without consideration and for the fraudulent purpose of keeping it alive to operate as a lien on Condit's lands prior to the lien of appellants' judgments. They prayed for relief by a decree requiring Lyons and McCabe, or one of them, to satisfy the judgment of record.

Respondents answer, denying that Torrey's claims had been paid before judgment was entered thereon, and averring that the judgment was wholly unpaid and unsatisfied, and a valid lien. They admitted (and it was afterwards proved) that Torrey assigned the judgment to Lewis J. Lyons, on June 22d, 1875, and that Lyons assigned it to Owen McCabe on January 31st, 1878. They averred that they respectively paid full value for the assignments, and took them in good faith and without any notice that the judgment was or was claimed to have been paid.

Upon hearing on the bill, answer and proofs, the bill was dismissed as against respondents, and the complainants appealed to this court, asserting that they are entitled to the relief they asked.

The question of fact, whether the Torrey judgment had been paid at the time of its assignment, was disposed of in the court below by the declaration that " the facts appear to be " that on May 13th, 1875, Torrey accepted certain mortgages in full satisfaction of his demands against Condit, including those whereon the judgment was founded. The denial of the relief asked by complainants was put solely upon the ground that Lyons was the purchaser of the judgment for full value, in good faith and without notice, and that the equity of complainants to require satisfaction of the judgment was a latent one, which did not affect the assignee who thus acquired title. The opinion is expressed that this judgment may be enforced by McCabe, Lyons's assignee, but whether so or not it is adjudged that as against Lyons, a *bona fide* purchaser for value, and without notice, or his assignee, a court of equity will not interfere in favor of subsequent judgment creditors, although the judgment purchased had previously been wholly paid and satisfied.

To these propositions, viz., (1) that a judgment once paid may, by being assigned to a *bona fide* purchaser for value, without notice, become enforceable as against encumbrancers acquiring rights prior to the assignment, and (2) that a court of equity should refuse relief to such encumbrancers against such a judgment, although in the hands of such an assignee, I find myself unable to agree.

A judgment is an obligation of record, which may be discharged by payment, like any other obligation. Such payment will discharge the debtor and those who succeed to his rights. It will entitle them to enforce a satisfaction of the record which contains his obligation. It is settled that the fact of payment will not be permitted to defeat a title founded on a judicial sale, based on an unsatisfied judgment. *Nichols* v. *Dissler, 2 Vr. 461.* But this decision involves and depends on other principles. It manifestly cannot be contended that any one acquiring rights under the debtor, by his own act, could be debarred from relief against a paid judgment. Nor can it be contended that a judgment creditor, who has been paid in full, could assign the judgment so as to debar the judgment debtor, or those succeeding to his rights, from relief. In such case, the assignee admittedly takes the judgment subject to the right of the debtor and those interested under him, to defeat its enforcement, if it has been paid.

It has also been settled that many obligations which have been discharged by payment or otherwise may, by the act of the contracting parties, be revived so as to possess renewed force as obligations. In *Stout* v. *Vankirk, 2 Stock. 78,* it was held that a judgment or obligation of record was susceptible of such revival by the joint act of the judgment debtor and judgment creditor. It is unnecessary to settle whether the doctrine there expressed is correct or not.

Assuming that a judgment obligation may, like other obligations, after being once paid, be revived and vitalized by the parties, it cannot be doubted but that the power to revive is subject to such limitations and restrictions as have been judicially settled as attending the power to revive other obligations.

The doctrine on this subject is settled in New Jersey. It is that the power to revive an obligation discharged by payment is limited in its effect, and does not extend so as to affect rights acquired prior to such revival. In *Bolles* v. *Wade, 3 Gr. Ch. 458,* it was held that a bond and mortgage, paid by the owner of the equity of redemption, was discharged as to subsequent encumbrancers, and that, while the owner of the equity might give new life to the mortgage by procuring its assignment to a third party for his benefit, yet it could not be thereby restored to its lost priority in respect to the subsequent encumbrancers.

In *Large* v. *Van Doren, 1 McCart. 208,* Chancellor Green held that when a mortgage had been diminished by payment, it was not competent for the parties to re-establish it for the full amount by reloaning the money paid thereon, to the prejudice of an encumbrancer who acquired rights after the mortgage, but prior to the reloaning. See, also, *Underhill* v. *Atwater, 7 C. E. Gr. 16.*

In *Stout* v. *Vankirk, supra,* Chancellor Williamson held that neither a judgment debtor nor a judgment creditor could, after the judgment had been paid, revive it, as against a mortgage or judgment creditor whose lien was acquired prior to the act of the debtor by which it is sought to affect his lien. Payment by the debtor was held to operate for the benefit and as a release in favor of creditors having liens on the fund bound by the judgment.

In *Hoy* v. *Bramhall, 4 C. E. Gr. 563,* this court held, in agreement with the court below, that an assignment of a mortgage made by the mortgagee at the request of the mortgagor, to a third person, who paid only a part of the amount due thereon, the remainder being paid by the mortgagor, gave to the mortgage a new vitality for the whole amount, so far as it affected the mortgagor, which he was estopped in equity from controverting; but that, as to subsequent encumbrancers or grantees of part of the mortgaged premises, intermediate the mortgage and its assignment, the assignee's rights were limited to the amount he had paid.

And this was in accord with the view expressed by this

Traphagen *v.* Lyons.

court and the court of chancery, in *Robinson* v. *Urquhart, 1 Beas. 515,* that the right to repledge mortgages once paid was complete, except as to intervening encumbrancers.

Applying the principles settled in these cases (which are in accord with decisions elsewhere), the result is that neither Torrey, the judgment creditor, nor Condit, the judgment debtor, nor both of them, could revive this judgment, if it had been paid, so as to restore its lost priority of lien, or to give it force as against appellants who acquired rights intermediate the judgment and the time of the assignment, when its revival must be claimed to have been brought about, if at all. If the opinion below was intended to declare that McCabe, the assignee, could enforce this judgment so as to cut off appellants' liens, I think it opposed to these principles, and erroneous.

The court below, assuming this judgment to have been paid before assignment, further held that, whether the judgment was enforceable or not, relief must be denied to appellants, as against the assignee, because he was a purchaser in good faith, for value, and without notice. As against him, it is declared that a court of equity will not lift a finger, although applied to by intervening encumbrancers, whose rights, we have seen, the judgment creditor and debtor cannot in such case affect.

If this is the equitable rule which is to be applied in such a case as is here presented, I think it is seriously questionable whether appellants have any effectual protection for the rights, which, as we have seen, are unquestionable.

But I will not stop to examine that question, for, in my opinion, appellants have, if the judgment was paid, ample right to relief, which should not be denied in a court of equity. The jurisdiction of such a court to remove the lien of a judgment which has been discharged, but remains unsatisfied of record, to the relief of other encumbrancers, is indisputable. The denial of relief in this case results from the application to it of the rule respecting *bona fide* purchasers, which is entirely inapplicable.

By the assignment, Lyons acquired no estate in or title to anything, whether lands or chattels. What he did acquire was such right as Torrey had in the obligation of Condit, which was

of record.   When the judgment was obtained, Torrey acquired this obligation, and incident to it was a lien on Condit's lands capable of being enforced by him.   If the obligation was paid, the incident of the lien and the right to enforce it by Torrey ceased.   He could convey to Lyons no other or greater right than he had, nor ·could he increase the right conveyed by any assertion that it was greater than it was in fact.

If, therefore, Lyons took the assignment without any intervention on the part of Condit, he acquired only what Torrey had, and his rights were subject to every equity and defence which Condit and those in privity with him had against Torrey prior to the assignment.

If Lyons took the assignment by the intervention of Condit and upon his assertion of its validity and force, then Lyons acquired more than Torrey's right, for he also acquired, by estoppel arising from Condit's acts, a right to enforce the judgment against Condit to the extent his acts estopped him.   But, as we have seen, neither Torrey nor Condit could by the assignment revive the paid judgment so as to affect appellants.

The right purchased by Lyons was therefore, in any event, subject to the rights of appellants.   His purchase in good faith could extend, and he must have known it could extend no farther than to the interest which Torrey had, or such additional right as Condit could create by estoppel.   Appellants' rights were incapable of being affected thereby.   But they appear to be so by reason of the unconscientious retention of the judgment unsatisfied of record, which justifies the relief appellants have sought.

Nor do I consider that appellants' rights are latent equities. They did not acquire their rights from Torrey but from Condit. They stand in his shoes, insisting on the defences and relief which he would be entitled to against this paid judgment, which defences and relief Condit cannot deprive them of by any attempt to revive the judgment.

With this expression of my dissent from the equitable considerations which moved the chancellor's judgment, I proceed to examine the question of fact which lies at the foundation· of a

correct determination of this case. That question is whether the judgment of Torrey, on June 22d, 1875, was paid or unpaid. For, if paid, nothing has occurred to infuse vitality in it as against appellants, who, in that event, would be entitled to the relief they ask. If unpaid, the judgment passed by the assignment, and appellants cannot disturb it.

The claim of the bill is restricted to the equity arising from the payment of the judgment and the unconscientiousness of retaining it unsatisfied of record.

Relief is not claimed on the ground of fraudulent practices tending to hinder, delay or defeat creditors, nor on the ground of an equity arising from the fact that Torrey, while holding the judgment, received collateral security therefor, which did not pass with the judgment when assigned. The relief claimed is put solely on the fact of payment. That fact having been denied, the burden of establishing it by sufficient and satisfactory proof was upon appellants.

In dealing with this question, after a deliberate decision of so competent a court, a different conclusion ought not to be reached except upon very clear grounds. Although the opinion below expresses perhaps rather an assumption than a determination of this question of fact, and the case turned on other points, yet I have kept this rule in view, and after a careful examination of the evidence, have been forced to conclude that appellants failed to prove that the judgment in question had been paid on June 22d, 1875, when it was assigned.

The sole witness relied on for this proof was Condit, the judgment debtor. He testified in positive terms that the claims on which the judgment was founded were paid before its entry by the transfer to Torrey of certain mortgages on a mill in New York. But I am constrained to say that this testimony was so shaken and, in my judgment, overcome by the direct contradiction of Torrey, by the circumstances proved and admitted, and above all, by his own acts and admission, that it ought not to be relied on.

Torrey distinctly denied that the mortgages were originally taken by him as payment, and averred that they were given and

received as security for his claims against Condit. He testified that he subsequently settled with Condit and then credited him with the mortgages and paid Condit a balance of $150 which was then due him. He fixed the date of that settlement as October 6th, 1876. The circumstances render improbable Condit's account of the transaction. He claims that the mortgages were received in payment before the entry of the judgment; yet he knew of its existence; it was a lien on his land, and, if paid, embarrassing to him, and he made no effort to set it aside or have satisfaction entered.

The mortgages originally secured $26,000. Some time about May 13th, 1875, they were reduced to $20,000. Either amount was in excess of Torrey's claims. If taken as payment, there seems to have been no provision as to the balance, except that Torrey was therefor to assume and pay Condit's share of certain debts, for which both of them were liable. As to the terms of that assumption they do not agree.

Condit declares that it was included in Torrey's agreement on receiving the mortgages. But Torrey rendered to him a statement of account between them for the whole of the year 1874, and it seems to have been received without objection. In it all of Torrey's claims were included and no credit was given for the mortgages, nor was there a charge of the debts alleged to be assumed.

No notice was taken of the mortgages in Torrey's account with Condit until May 13th, 1875, when Torrey credited the account with " F. R. Condit's bonds, $20,000." These were bonds secured by the mortgages. This entry, unexplained, tends to contradict Torrey, though it cannot be claimed to corroborate Condit, for his testimony is that the mortgages were accepted as full payment nearly a year before. But the entry is, I think, explained. Torrey admits that he did enter into some undertaking to pay the share due from Condit on certain joint debts. Simultaneously with the entry crediting the bonds, he charged himself with these assumptions, not as definite obligations but conditionally, " to be paid by me when F. R. Condit's bonds are paid." The credit was, therefore, not absolute nor intended so

to be, and that so explains the entry as not to necessarily contra-- dict Torrey's express statement that he held the mortgages as collateral until the settlement.

But Torrey's statement is further corroborated and Condit's statement contradicted by the subsequent conduct and admission, of the latter.

He took an active part in transferring this judgment to Lyons as a subsisting unsatisfied judgment. If he now claims credit for his statement that it was paid, it must be by asking us, to believe that he was engaged in a conspiracy to defraud Lyons.

On June 24th, 1875, he entered into a written agreement with. Torrey respecting their transactions. In it he expressly admitted a subsisting indebtedness from him to Torrey, which he agreed should continue, and that Torrey should hold the mortgages as security therefor. This agreement is impossible of reconciliation with his claim that the indebtedness was paid by these mortgages . long before.

The result is that appellants have not proved that the judgment was paid before assignment. The preponderance of evidence is that Torrey then held the judgment unpaid, with the mortgages as collateral security for all his claims against Condit, including those merged in the judgment.

In this situation it is plain that Torrey might sell his judgment to any person and loan the proceeds of the sale to Condit,. who might pledge the mortgages as security for the loan. It is also plain that Torrey might, at Condit's request and for his benefit, assign the judgment to any person. Upon an express promise on the part of Condit, or upon a promise implied from the assignment at his request and for his benefit, a new obligation would arise, for which Condit might pledge the mortgages as security.

Whether subsequent creditors could impeach such a transaction,. if designed to defeat or hinder their claims, or as inequitably imposing additional burdens on a fund on which they had subsequent liens, are questions not raised in the case. Nor do I think, such a transaction invalidated by reason of Condit's arranging. the transfer, or because Lyons knew that it was to enure to--

Condit's benefit. It is clear the transaction itself was not in-
tended to be, and therefore was not, a payment of the judgment.

The transaction was substantially this: Torrey holding the
judgment unpaid and the mortgages as collateral, Condit applied
for and obtained an assignment of the judgment for his benefit,
expressly promising to repay Torrey the amount and pledging
the mortgages as security therefor. This was not intended to be
payment of the judgment, which passed unaffected and unsatisfied
to the assignee.

My conclusion, therefore, is that the decree of the court of
chancery dismissing the bill ought to be affirmed, not on the
ground there assigned, but because appellants failed to establish,
by sufficient and satisfactory proof, that the judgment had been
paid before assignment.

*Decree unanimously affirmed.*