# THE AVON-BY-THE-SEA LAND AND IMPROVEMENT COMPANY

*v.*

## LOUIS G. McDOWELL et al.

[Decided February 6th, 1906.]

1. Where goods of a judgment debtor were in possession of a mortgagee thereof, the taking from the mortgagee of a list of the chattels already agreed on between the mortgagee and the judgment debtor, the mortgagor, for the purpose of an inventory, and annexing such inventory to the levy, was sufficient as a legal levy, although the officer did not see the goods.

2. Where the owner or purchaser of property subject to several encumbrances pays off a prior encumbrance with his own money, the payment inures to the benefit of the subsequent encumbrances, against which the prior encumbrance cannot be kept alive for the owner's benefit, even by express agreement.

On final hearing on bill, answer, replication and proofs.

*Mr. Acton C. Hartshorne,* for the complainant.

*Mr. Samuel A. Patterson,* for the defendants.

EMERY, V. C.

Complainant is a judgment and execution creditor of a Mrs. Albertson, and the defendant Thompson is the purchaser, and the defendants McDowell and Faust are the lessees, of personal property of the judgment debtor levied on, or claimed to be levied on the property, prior to the purchase and lease. The lessees, at the time of the levy claimed, were also in possession of the personal property under a lease from the judgment debtor, and McDowell, one of the lessees, was at that time holder of two chattel mortgages on the property for the sum of $860. Both the mortgages were then due, and expressly authorized the mortgagee, in case of judgments against the mortgagor, to take immediate possession of the mortgaged chattels and sell them to pay the mortgage debt. The judgment was recovered on November 28th, 1900; the execution returned with a levy on real

estate and personal property of the debtor at the January Term (1901) of the Monmouth circuit, and the conveyances of the real estate and personal property by the debtor to the defendant Thompson were made on or about April 9th, 1901. On May 14th, 1901, Thompson leased the hotel and furniture in question to McDowell and Faust for five months, at the rent of seventeen and one-half per cent. of the gross receipts of the business during the tenancy. $475 to be paid in cash at the time of signing the lease, the balance at the termination of the lease, or sooner closing of the hotel. The lease contained the further provision that the lessees should have the right on the final settlement to deduct from the rents the amounts due on the two notes given to McDowell by Mrs. Albertson, then amounting to $915.20, principal and interest, which were to be credited as so much paid on the rent, provided the seventeen and one-half per cent. amounted to a sum equal to the cash paid and the amount then due on the notes, and if the percentage was not sufficient to satisfy the whole amount of the notes, the lessees were to credit on the notes only the amount of the balance due on the rentals. These notes to McDowell were the notes secured by the chattel mortgages on the furniture, and it was admitted on the hearing that $300 over and above the amount due on the mortgages has accrued as rent under the lease. Complainant, in August, 1901, became the purchaser, at sale under the execution, of the right, title and interest of the judgment debtor in the furniture for the sum of $30. The furniture was not taken from the possession of the lessees and mortgagee by the purchaser, but has been sold since the filing of the bill, by consent of the parties, and the proceeds of sale deposited subject to the joint order of their attorneys. Complainant's bill, resting on its title as judgment and execution creditor and purchaser at the sale, was filed before the termination of the lease, and alleged that the mortgages were paid by the rental percentages, and prayed an account of the amount due on these mortgages. The right to an account is resisted by both purchaser and lessees on two grounds. The *first* is that the levy under the execution is illegal and void, for the reason that it was made by the sheriff without his actually seeing the property levied on. The return to the execution

shows a levy on the personal property, with an inventory an-
nexed, and the under sheriff, to whom the execution was deliv-
ered by the plaintiff's attorney, together with the list of chattels
taken from the chattel mortgages, says that he sent the execution
to an officer at Asbury Park to go down and make the levy. This
officer's evidence has not been produced by the defendants, and
in its absence I must hold that the sheriff's return of a levy
actually made on the goods has not been so contradicted or shown
to be untrue that the sale under it can be affected because of the
supposed irregularity in making the levy. But on this point
my further conclusion is that under our decisions the levy, by
annexing the inventory, was sufficient in this case, without actu-
ally seeing the goods, for the reason that the goods levied on
were, at the time of the levy, in the actual possession of the
mortgagee. The sheriff was not entitled to take the goods from
the possession of the mortgagee, and his possession under any
levy could only be constructive. *Fox* v. *Cronan,* 47 *N. J. Law*
(*18 Vr.*) *493, 509, 510.* And so far as the levy was concerned,
his only right was to see the goods for the purpose of making
the levy. Taking from the chattel mortgage a list of the chat-
tels already agreed on by the mortgagor and mortgagee, and
annexing this list as the inventory, is, I think, sufficient as a
constructive seizure for the purpose of a legal levy. Making an
inventory from a list given by the defendant for the purpose of
the inventory, and without seeing the goods, operates as a con-
structive seizure, and is valid against defendant. *Caldwell* v.
*Fifield,* 24 *N. J. Law* (*4 Zab.*) *150, 160 (Supreme Court, 1853).*
And although it has not in the later cases been expressly held
that a list or inventory made without seeing the goods, and with-
out the defendant's consent, would be valid where the officer has
the right to take the goods into his possession, I think that
where he has no such right, but must levy and sell subject to
the mortgage, an inventory of the goods in a mortgagee's pos-
session, taken from the mortgage, is a sufficient constructive
seizure for the purpose of the levy as against both mortgagor
and mortgagee, and that they, or persons claiming under them,
have no right to demand an actual view as necessary to a valid
levy on the mortgaged chattels.

*Second.* It is insisted that if the mortgages of McDowell are paid, the payment was made from Thompson's funds, being the rental of his property, and he is therefore in equity entitled to be subrogated to the rights of the chattel mortgages. But if the levy was valid, Thompson took title to the chattels subject to the execution as well as the mortgages, and the law is settled that where the owner or purchaser of property subject·to several encumbrances pays off a prior encumbrance by his own money, the payment enures to the benefit of the subsequent encumbrances, and as against them the prior encumbrances cannot be kept alive for the owner's benefit, even by express agreement. *Bolles* v. *Wade, 4 N. J. Eq. (3 Gr. Ch.) 458; Traphagen* v. *Lyons, 38 N. J. Eq. (11 Stew.) 613, 616 (Court of Errors and Appeals, 1884).* A *fortiori* on such payment by the owner, without any agreement for subrogation or keeping the security alive, a court of equity will not revive the prior encumbrance against subsequent encumbrances by the application of the equitable doctrine of subrogation in favor of the owner.

Complainant is entitled to a declaration that the mortgages have been paid, and that the sale of the goods to Thompson was subject to the lien of its judgment and execution. At the settlement of the decree I will hear counsel on the right to further relief. This may depend on the terms of the agreement for sale of the mortgaged chattels made by consent of parties after filing the bill.