SELRAY INVESTMENT COMPANY, complainant,

*v.*

MILLIE MASSIMINO et al., defendants.

[Decided April 7th, 1932.]

*Mr. Norman H. Samuels,* for the complainant.

*Mr. E. Robert Coven,* for the defendants.

BIGELOW, V. C.

The bill is filed to foreclose a mortgage made by Millie Massimino and husband to Joseph Bauman and wife, securing $4,700 and assigned to complainant November 5th, 1931. The defendants answer that the mortgage has been paid. These are the facts: On the premises were a dwelling house and a garage which were destroyed by fire or in some other manner on March 28th, 1931. At that time the mortgagees, the Baumans, held two policies of the Home Fire and Marine Insurance Company insuring Mrs. Massimino against loss by fire of the buildings mentioned. The policies are in the ordinary form and have attached standard mortgagee clauses. When the Baumans attempted to collect the insurance, the company denied liability but finally offered to compromise on this basis: It would pay them $4,500 and in consideration thereof they would assign the mortgage to the Selray Investment Company, the complainant in this cause. This offer was accepted and the settlement carried out. Payment to the Baumans was made by check of complainant, but the money for this purpose was furnished to complainant by the insurance company. This payment, defendants assert, satisfied the mortgage.

The mortgagee clause contains this agreement: "Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities, but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim."

Different rules apply when insurance is procured by or at

the expense of the mortgagor and when insurance is procured by the mortgagee at his own cost. In the latter case, the owner has no interest in the insurance; while in the former case, the owner is interested and has a right to have the money collected by the mortgagee on a loss, applied in reduction of the mortgage debt. *26 C. J. 441*. Provided the insurer was liable to the owner on the policy. The evidence in this cause does not disclose who procured the insurance policies, but since they name as the insured Mrs. Massimino, I think the presumption is that she procured them rather than the mortgagees. Payment to the Baumans was made by check of complainant and not by check of insurer, but this was a mere matter of form. The money was the money of the insurance company and the payment was made in settlement of the Baumans' claim against that company. The transaction will be given the same effect as if the insurer had made payment to the mortgagees direct and as if it itself had taken the assignment of the mortgage.

But complainant urges since the insurer disclaimed liability as to the owner, that it need not apply the amount paid the Baumans in reduction of the mortgage. As between the insurer and the mortgagee, the insurer, upon disclaiming liability to the owner, is entitled to subrogation to the mortgagees' rights and to assignment of the mortgage in accordance with the terms of the mortgagee clause. But when the insurer seeks to assert against the owner the rights or the mortgage which it has received from the mortgagee, then the question whether the insurer is actually liable to the owner on the policy arises, and if liability exists, the owner may defend to the extent of the liability. The correct rule was stated by the court of appeals of Maryland in *Frontier Mortgage Corp.* v. *Heft, 146 Md. 1; 125 Atl. Rep. 772, 777:* "The words 'and shall claim that, as to the mortgagor or owner, no liability therefor existed,' must be held to mean that the claim is well founded, and that, as a matter of fact, no liability exists on the part of the insurer to the mortgagor or owner. *Aetna Life Insurance Co.* v. *National Union Fire*

*Insurance Company and Harris, 98 Neb. 446; 153 N. W. Rep. 553; L. R. A. 1916A, 784; Traders' Insurance Co. v. Race, 142 Ill. 338; 31 N. E. Rep. 392; O'Neil v. Franklin Fire Insurance Co., 159 App. Div. 313; 145 N. Y. Supp. 432.*

"The right to subrogation does not depend upon the claim of no liability, but upon the fact of no liability. The claim must be based upon a state of facts, which, under the contract of insurance, would exempt the insurer from liability to the mortgagor or owner. To give any other construction would, as suggested by counsel for appellees, enable the underwriters to escape liability in every case where a mortgagee clause such as this is attached to the policy, by merely claiming it is not liable to the mortgagor paying the mortgage, and being subrogated to all securities held by the mortgagee, and then proceed to reimbursement at the expense of the mortgagor, for whose benefit and protection the insurance was in fact secured.

"Obviously, a construction producing or permitting such a result could not be sanctioned. Nor could it have been the intention of the parties."

These rules are in harmony with *Palmer v. McFadden, 86 N. J. Eq. 377,* modified *sub nom. Palmer v. Niagara Fire Insurance Co., 87 N. J. Eq. 347,* wherein it was held that the insurer must credit upon the foreclosure decree the sum due the mortgagor under the policy. There, the fire loss occurred pending the foreclosure suit and the insurer paid the mortgagee the amount of the decree and took an assignment thereof and of the mortgage.

Complainant must credit upon the mortgage the sum actually due Mrs. Massimino under the policies.

There remain the questions whether the insurance company was liable to Mrs. Massimino and if so, what was the amount of the liability. The defendants expected to prove the existence and amount of liability by two witnesses, of whom one died a week before the final hearing and the other unexpectedly left town the morning of the hearing. I was doubtful whether the fact of liability by the insurer to Mrs. Mas-

simino would constitute a defense in this suit, so I permitted counsel for complainant to proceed, reserving to both parties the right to present at a later day their evidence on this question if I should decide that it was material. I find that it is, and will fix an early day to take the evidence. Or, if both parties prefer, further proceedings in this suit will be stayed until liability to Mrs. Massimino on the policy be determined in the action at law which, I understand, is now pending.