ROBERT G. WIENCKE (successor to Samuel Stock), receiver of the National Bank of North Hudson, at Union City, New Jersey, a corporation of the United States of America, complainant-appellant,

*v.*

BRANCH-BRIDGE REALTY CORPORATION, a corporation of New Jersey, et al., defendants-respondents.

[Decided February 6th, 1939.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"The bill of complaint herein was filed by Samuel Stock, receiver of National Bank of North Hudson, to foreclose a mortgage dated February 1st, 1932, given by New Jersey Bergen Square Realty Co. (hereinafter called Bergen Square Co.), to John J. McMahon to secure the payment of $150,000, covering a tract of land in Jersey City, which mortgage was assigned by McMahon to a predecessor receiver of said bank, by assignment bearing even date and recorded simultaneously with said mortgage. The bill alleges that the consideration for the assignment was an existing indebtedness due from McMahon to the bank, which indebtedness as well as the full amount of the mortgage, is still due. It also alleges as subsequent liens against the mortgaged premises, two mortgages for $300,000 each, executed by Bergen Square Co. to McMahon and assigned by him to William E. Hanna; also a judgment recovered February 17th, 1933, by United States of America in the United States district court for the district of New Jersey against Bergen Square Co. for $40,456.69 on an income tax lien against that corporation; also a judgment recovered May 17th, 1935, by Robert L. Stevens and John L. Ridley receivers of Lloyds Insurance Co. against Bergen Square Co. for $47,753.22. The bill further alleges conveyance February 17th, 1933, of the mortgage premises by Bergen Square Co. to Branch-Bridge Realty Co. (hereinafter called Branch Bridge Co.), and the appointment of John L. Ridley as receiver of Bergen Square Co. The bill contains other allegations which it is not necessary to state for the purposes of this decision. The defendants (among others) are Branch Bridge Co., Hanna, the receivers of Lloyds Insurance Co. and the receiver of Bergen Square Co. An answer, with counter-claim, was filed by the receivers of Lloyds Insurance Co. and the receiver of Bergen Square Co. attacking the validity of complainant's mortgage as well as the validity of the two $300,000 mortgages assigned to Hanna, on the ground that all three were without consideration and were given to hinder, delay and defraud the counter-claimants and other creditors of Bergen Square Co., and also attacking the validity of the conveyance by Bergen

Square Co. to Branch Bridge Co. on the same grounds. An order was subsequently entered directing that Louis H. Pink, superintendent of insurance of the State of New York, as liquidator of Lloyds Insurance Co., be added as a defendant to the bill of complaint and he also filed an answer, with counter-claim alleging an interest in the proceedings by virtue of a payment of $32,834.45 made by him as such liquidator to the United States of America in settlement of a claim on a surety bond on which Lloyds Insurance Co. was liable, given to secure payment of income taxes due from Bergen Square Co. to the United States. He, too, attacks the validity of the complainant's mortgage and the two $300,000 mortgages set out in the bill of complaint, on the ground of no consideration and fraud. Subsequently Saul Nemser was substituted in place of John L. Ridley as one of the receivers of Lloyds Insurance Co. and as receiver of Bergen Square Co.

"The deed from Bergen Square Co. to Branch Bridge Co. conveyed the premises described in the bill of complaint and another parcel owned by the grantor, thereby divesting the grantor of all its assets and rendering it insolvent. John J. McMahon was president of both corporations and he testified that no consideration passed for that conveyance. The deed will be set aside as prayed for by the counter-claimants, who were at the time of the conveyance creditors of Bergen Square Co., as fraudulent as to them.

"The two $300,000 mortgages given by Bergen Square Co. to John J. McMahon and by him assigned to Hanna, will also be set aside as void. McMahon testified that there was no consideration for those mortgages; that they were assigned to Hanna without consideration to hold for him (McMahon) and a decree *pro confesso* on the counter-claim was entered against Hanna.

"I have no doubt that the $150,000 mortgage complainant seeks to foreclose was given by Bergen Square Co. to McMahon without consideration. McMahon's claim, as a witness, that the mortgage was given as security for money he had advanced from time to time to Bergen Square Co. is not supported by his own testimony. It appears that Bergen Square Co. was

incorporated in 1922 and that McMahon and one Kerbaugh owned all its capital stock down to 1929, when McMahon bought Kerbaugh's holdings and became sole owner of all the stock. The company did no business after 1929 and all advances McMahon claimed to have made were prior to that year. He testified that such moneys as he had advanced for which the $150,000 mortgage was executed, were given to Kerbaugh for the purpose of another business in which he and Kerbaugh were interested and that none of such sums went into the treasury of Bergen Square Co. The account books of the company are missing and its minute book records nothing concerning any loan by McMahon to the company or concerning any indebtedness of the company to him. The question therefore is, is complainant as assignee of a mortgage given without consideration, a *bona fide* holder thereof as against the mortgagor's creditors? For the complainant it is argued that in taking the assignment he was justified in relying upon what purported to be a waiver of notice of a special meeting of directors of Bergen Square Co. held the day the mortgage bears date, signed by the corporation's three directors; of a copy of a resolution adopted by the directors acknowledging a debt to McMahon in excess of $150,000 and authorizing the officers of the corporation to execute a mortgage to him to secure the payment of said sum; of an estoppel certificate executed by the officers and directors of the company and of an affidavit sworn to by McMahon.

"The waiver of notice is signed by John J. McMahon, his brother James McMahon and by Joseph Mocco, an employe of the two McMahons, being the company's three directors. The copy of the resolution is attested by James McMahon as secretary, as well as by the three directors, as a true copy of an adopted resolution, but Mocco who was the only director to testify concerning the alleged meeting, said he did not attend such a meeting and knew of no debt owing by the company to McMahon. The company's minute book does not record the holding of such a meeting and of course, no record of such a resolution. The mortgage and accompanying bond were executed in the name of the corporation by John J. McMahon as president and James McMahon as secretary.

"It appears that as far back as 1931 John J. McMahon, James McMahon and their firm, known as J. & J. McMahon were indebted to complainant's bank on notes made by them and on notes endorsed by one or all of them and that John J. McMahon was also indebted to the bank on a stock assessment liability, the total of the entire indebtedness being upward of $170,000; that shortly prior to the execution of the $150,000 mortgage, an attorney for the bank called upon John McMahon at his office (which was also the principal office of Bergen Square Co.) concerning payment of the aforesaid indebtedness and was told by McMahon that Bergen Square Co. owed him a large sum of money and that the only thing the bank could get for said indebtedness would be a mortgage from the company to McMahon. The books of Bergen Square Co. were then available and could have been examined by the attorney, or by any other representative of the bank, but the bank made no inquiry concerning the indebtedness and took McMahon's word for it and then, or a few days later, the bank agreed to accept an assignment of a mortgage to be made by Bergen Square Co. to McMahon. In taking the assignment the bank relied on an estoppel certificate executed by the two McMahons, as officers of the mortgagor, both of whom were indebted to the bank and interested in averting legal proceedings on such indebtedness. They were, in fact, the corporation to the knowledge of the bank and the estoppel certificate was in effect, nothing more than their individual statement that the mortgage was valid. So far as John J. McMahon was concerned, it was merely his admission that the corporation he owned, owed him money, and that as owner of the corporate mortgagor, he would present no defense as against himself as mortgagee. The affidavit he swore to at the same time is but an affidavit made by him as president of Bergen Square Co., declaring that no liens existed against the mortgaged property, with the additional statement that the execution of the mortgage was authorized by resolution of the company's directors.

"In accepting the mortgage I think complainant was charged with knowledge of the well established principle of law affecting corporations in contracting with their officers, which

is that such contracts are voidable at the instance of the corporation, its stockholders or creditors (*Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law 505; Voorhees* v. *Nixon, 72 N. J. Eq. 791*) and that complainant was not justified in relying solely on a statement made by the president mortgagee, that the mortgage contract made by his corporation with him secured a valid debt due him. It was the bank's duty to make some independent investigation as to the actual existence of such debt and if the bank's attorney, or any other representative had made inquiry of the mortgagee as to the basis for the claimed indebtedness, his answers if the same as given on the hearing of this cause, would have demonstrated that no foundation for the mortgage contract existed.

"An assignee of a mortgage takes the mortgage subject to all equities as between the mortgagor and the mortgagee and it is the assignees' duty to make proper inquiry of the mortgagor as to his liability thereon. *Walz* v. *Oser, 93 N. J. Eq. 280; Davenport* v. *O'Connell, 117 N. J. Eq. 454.* In order to enable an assignee to take advantage of a mortgagor's estoppel, he must be a *bona fide* holder; he can only be protected by the estoppel to the extent to which he has parted with his money. *Robeson* v. *Robeson, 50 N. J. Eq. 465.* The assignment of this mortgage having been taken as security for the payment of a pre-existing debt, complainant is not a *bona fide* holder, because the debt still remains and complainant has lost no right which he had to prosecute and recover it. *Sipley* v. *Wass, 49 N. J. Eq. 463; Tate* v. *Security Trust Co., 63 N. J. Eq. 559.* If he has lost any right by lapse of time, it is the result of his laches. The maturity date of the mortgage is August 1st, 1933, but the bill to foreclose was not filed until January 6th, 1937. I think the mortgage is void as to the counter-claimants, receiver and creditors of Bergen Square Co. and that the bill of complaint should be dismissed.

"The counter-claimants also seek to have declared void as fraudulent, a mortgage to secure payment of $80,000 dated June 25th, 1931, given by Bergen Square Co. to John J. McMahon and by him assigned the following day to National Bank of North Hudson, which mortgage covered the second

tract then owned by the mortgagor. This mortgage was assigned to the bank as collateral for the "McMahon line" of indebtedness to the bank. McMahon was the only witness to testify concerning the consideration for this mortgage and he testified that it was given for a debt due him for money loaned to, or advanced by him for the company, and there the testimony as to consideration rested. His testimony stands uncontroverted on the record. He was not examined as to the details of his loans or advancements for which the $80,000 mortgage was given and no attack was made on it as was made against the alleged consideration for the $150,000 mortgage executed eight months later. The burden of proof being on the counter-claimants to show that the mortgage was without consideration, I feel that the burden has not been sustained and the relief sought against the $80,000 mortgage will be denied.

"The counter-claimants also contend that both mortgages are void because Bergen Square Co. was insolvent at the time they were given. Under *R. S. 14:14-2*, a conveyance made by a corporation while insolvent, is void as against creditors. The proofs show that the mortgagor did no business after 1929; that its only assets when the mortgages were executed, were the tracts of land described therein, against which were tax arrears and the properties had been sold for taxes; that it had but a small bank balance and that the claim of the United States for income taxes was asserted, although not reduced to judgment until long after the mortgages were given. Insolvency of the mortgagor was not set up in the counter-claims as a ground for voiding the mortgages and the proofs do not justify me in determining that the mortgagor was insolvent. The government and McMahon were its only creditors and I am not satisfied that the value of the corporate real estate at the time the mortgages were executed, was less than sufficient to satisfy the claims of the existing creditors."

*Mr. Edward A. Smarak,* for the appellant.

*Mr. Saul Nemser,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court of chancery by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER. JJ. 15.

*For reversal*—None.