The endeavor of the complainant in the prosecution of this cause is to foreclose her mortgage with an adjudication of its superiority over the mortgage encumbrance acquired by the defendant. The involvement emanates from the following procession of events:
On May 20th, 1913, a bond and accompanying mortgage encumbering the premises situate in the Township of Ewing, Mercer County, were executed and delivered by the owners, Sallie and Peter Van Fleet, to the Standard Fire Insurance Company to evidence and secure an indebtedness of $2,200. On December 1st, 1919, the mortgaged premises were conveyed to Luigi Garzio and his brother, Raffaele Garzio, who thereupon assumed and agreed to pay the mortgage debt. A partition suit accomplished a sale of the property on June 30th, 1928, to Luigi Garzio in fee but subject to the mortgage. It is reasonably inferred that Luigi Garzio required funds to enable him to acquire the sole ownership of the property, and he obtained a loan of $2,000 from his friends, Giampietro Di Giovacchini and his wife, Elena Di Giovacchini. To shelter his friends against loss, Luigi Garzio and Palma Garzio, then his wife, executed a bond and mortgage dated July 2d 1928, acknowledged on August 11th, 1928, and recorded on January 18th, 1933, overlaying the same premises and conditioned upon the payment of this loan. The former mortgage is now held by the defendant; the latter by the complainant. On March, 29th, 1929, Palma Garzio died, which is an occurrence of some conjectural significance in the study of subsequent events. On December 4th, 1930, Luigi married his present wife, Rose.
In March, 1933, Luigi Garzio was convicted of a relatively serious statutory misdemeanor and sentenced to serve a lengthy term of imprisonment. He prosecuted an appeal from his conviction (State v. Garzio, 113 N.J. Law 349; 175 Atl. Rep. 98) and thereby incurred financial obligations to the official stenographer for the transcript of the proceedings at his trial and to his attorney for professional services. His wife returned to New York City. On June 5th, 1933, the dwelling house and its contents situate on the mortgaged *Page 109 
premises were totally destroyed by fire. There were then in effect two policies of insurance against the loss of the building by fire. The one appertaining exclusively to the dwelling in the amount of $4,000 had been issued by the Standard Fire Insurance Company, the holder of the first mortgage, embodying the conventional clause making any loss payable to the company itself as mortgagee. The additional policy providing insurance of $2,000 on the dwelling and $2,000 on the household furnishings was issued by the Hartford Fire Insurance Company. Neither policy embraced any provision for the protection of the holders of the second mortgage, despite the covenant of the mortgagors to insure the building for the collateral security of their junior lien.
Relegating the details of the settlement, the fact is creditably established that pursuant to the terms of the policies, the Standard Fire Insurance Company, the insurer and the mortgagee, received out of the proceeds of the insurance, the sum of $2,317.03 which was the precise sum then due for principal and interest upon its mortgage.
An excerpt taken from the report of the adjuster to the Hartford Company is illuminating:
"Yesterday the writer visited Trenton with your draft for $2,345.25 in settlement of claim under the above numbered policy by fire of June 6, 1933 and also delivered draft of the Standard Fire Insurance Company for $1,862.67.
"These drafts you will recall were made payable to Luigi Garzio, Standard Fire Insurance Company of New Jersey, H.R. Barry and Meyer M. Semel, Attorney.
"We had the assured endorse your draft, also Mr. Barry and Mr. Semel. This draft was turned over to Mr. Owen J. Prior, President of the Standard Fire Insurance Company in extinguishment of the Garzio mortgage, which totals $2,317.03."
Nevertheless, at the request of Mrs. Garzio, the Standard Fire Insurance Company did not endorse or otherwise authorize the satisfaction and cancellation of its mortgage but assigned the bond and mortgage under date of December 27th, 1933, to Rose Garzio, the wife of the insured. The company, however, was cautious. It excluded from its assignment any covenant of the amount, if any, remaining due and *Page 110 
owing upon the bond and mortgage. This assignment was recorded on October 5th, 1934.
It is also made known that on April 4th, 1934, Luigi Garzio, then in prison, executed a deed fashioned to convey the mortgaged premises to Giampietro Di Giovacchini and his wife. Although her name appears therein as a grantor, Rose Garzio never executed the deed and it has remained unrecorded and in the possession of the complainant. Giampietro Di Giovacchini died testate on April 9th, 1938, nominating his wife, the complainant, as the executrix and designating her the sole beneficiary of his estate.
A sale of the mortgaged premises for delinquent taxes supervened and a tax sale certificate was issued by the Township of Ewing to one Joseph Bash. In sequence came the institution of a proceeding on January 15th, 1939, by the County of Mercer to acquire a portion of the mortgaged premises by condemnation. On April 25th, 1939, the county petitioned for leave to deposit the amount of the award in this court, and significantly this petition contains an allegation that according to the information of the petitioner, the lands had been conveyed by Luigi Garzio to one Giampietro Di Giovacchini by an unrecorded deed in the possession of Helen (Elena) Di Giovacchini, wife of Giampietro.
This narrative of the course of events may be concluded with the revelation that the defendant acquired the tax certificate from Bash on March 29th, 1940, and his demand upon Mr. and Mrs. Garzio to redeem the property from the tax liens originated negotiations which ripened into the transaction of January 10th, 1941, in which Rose Garzio upon receipt of $1,225 from the defendant assigned to him the bond and mortgage previously transferred to her by the Standard Fire Insurance Company and for an additional $25 Luigi Garzio and Rose granted and conveyed to the defendant their estates in the mortgaged premises. Amid the circumstances here recited, which mortgage is equitably entitled to precedence?
In the policies, Luigi Garzio was the sole designated insured and in the absence of other evidence, it is presumed that he procured the insurance. Selray Investment Co. v. Massimino, *Page 111 110 N.J. Eq. 300; 160 Atl. Rep. 323. Cf. Leyden v. Lawrence,79 N.J. Eq. 113, 115; 81 Atl. Rep. 121; affirmed, 80 N.J. Eq. 550; 85 Atl. Rep. 1134.
In the absence of circumstances productive of a different implication, it is ordinarily resolved that where the mortgagor or owner obtains insurance on the mortgaged property under a policy containing the usual clause making any loss due him payable to the mortgagee as his interest may appear, the proceeds of such insurance, when received by the mortgagee, constitute a payment pro tanto in reduction or extinguishment of the mortgage debt. Pearman v. Gould, 42 N.J. Eq. 4;5 Atl. Rep. 811.
Here, moreover, the drafts in payment of the fire loss were made payable to the insured who was the owner of the equity of redemption and to the first mortgagee and to the attorney and official reporter who were his creditors. The insured voluntarily endorsed the drafts and from the proceeds of one, the first mortgagee withdrew a sum equivalent to the principal and interest then due and owing on the bond. This, the assignee Rose Garzio, acknowledges to be true. This payment by Luigi Garzio in all the circumstances disclosed by the evidence operated to satisfy the delinquent obligation of the bond and to extinguish the accessory mortgage lien.
Ostensibly, Rose Garzio possessed no valid claim against the insurance companies under the terms of the policies. The only contracts of insurance assented to by the companies were those with her husband, and it is not evident that the policy pertaining to the loss of household furniture was in any respect intended for her benefit. Crown Fabrics Corp. v. NorthernAssurance Co., Ltd., 124 N.J.L. 27; 10 Atl. Rep. 2d 750;Agricultural Insurance Co. v. Fritz, 61 N.J. Law 211;39 Atl. Rep. 910.
It was, however, suggested that some of the articles of furniture destroyed by the fire (for the loss of which Luigi had collected insurance) belonged to Rose and that Luigi was also indebted to her for money which she had previously loaned to him. On this occasion advantages possibly accruing to Mrs. Garzio were contemplated; the disadvantages to be thereby visited upon the complainant were ignored. The bond and mortgage were arbitrarily assigned to Mrs. Garzio. *Page 112 
It is undeniable that an assignee of a bond and mortgage takes it subject to all equities available between the assignor and the obligor, mortgagor, owner of the mortgaged premises and others having interests as junior encumbrancers. Conorer v. VanMater, 18 N.J. Eq. 481; Magie v. Reynolds, 51 N.J. Eq. 113;26 Atl. Rep. 150; Henion v. Monahan, 110 N.J. Eq. 361;160 Atl. Rep. 566; Davenport v. O'Connell, 117 N.J. Eq. 454;176 Atl. Rep. 366; Wiencke v. Branch-Bridge Realty Corp., 125 N.J. Eq. 135; 4 Atl. Rep. 2d 415; Massinger v. Goering, 128 N.J. Eq. 399; 16 Atl. Rep. 2d 338; affirmed, 129 N.J. Eq. 385;19 Atl. Rep. 2d 460. This rule of law receives confirmation in our statute. N.J.S.A. 46:9-9.
Almost a century ago it was determined that if a bond and mortgage are paid by the tenant of the equity of redemption, the efficacy of these instruments is discharged as to all subsequent encumbrances. The owner of the premises, upon purchasing the mortgage debt, thereby extinguishes the encumbrance upon his land and if, at his request, the bond and mortgage are assigned to a third person, they acquire no greater efficiency by such assignment in respect of their lost priority than they would have had if delivered directly to the owner. Bolles v. Wade, 4 N.J. Eq. 458.
This equitable principle designed to safeguard the rights and interests of subsequent encumbrancers has been invoked and applied in many analogous cases. Stout v. Vankirk, 10 N.J. Eq. 78; Shepherd's Executrix v. McClain and Murray, 18 N.J. Eq. 128; Traphagen v. Lyons, 38 N.J. Eq. 613; Peiffer v. Bates,45 N.J. Eq. 311; 19 Atl. Rep. 612; Boice v. Conover, 69 N.J. Eq. 580; 61 Atl. Rep. 159; affirmed, 71 N.J. Eq. 269;65 Atl. Rep. 191; Avon-by-the-Sea, c., Co. v. McDowell, 71 N.J. Eq. 116,119; 62 Atl. Rep. 865; Atwood v. Carmer, 75 N.J. Eq. 319,328; 73 Atl. Rep. 114.
The basic reasoning is that the mortgage is a mere incident of the debt which it is intended to secure and a defense to the debt is a defense to the mortgage. If the mortgage be given to secure a non-negotiable instrument, as in the present case, the assignee acquires it subject to all defenses to the bond or other instrument evidencing the indebtedness, regardless *Page 113 
of the absence of actual or constructive notice of such defenses.Magie v. Reynolds, supra; Voorhees v. Nixon, 72 N.J. Eq. 791,796; 66 Atl. Rep. 192; affirmed, sub nom. Voorhees v.Malott et al., 73 N.J. Eq. 673; 69 Atl. Rep. 643.
The assignee of such instruments takes them subject to all equities between the assignor and other parties in interest, whether these equities be latent or not. Conover v. Van Mater,supra.
In the present case, the complainant as a subsequent encumbrancer may assert the defenses and seek the relief to which Luigi Garzio was entitled upon the satisfaction of the bond and mortgage, and the complainant cannot be divested of such defenses and relief by any attempt on the part of Luigi Garzio to revive and restore the lien of the mortgage to its former priority.Traphagen v. Lyons, supra.
A revival or renewal of a mortgage once paid, is tantamount to the execution of a new mortgage and the creation of a new encumbrance. Peiffer v. Bates, supra. The contractual power to revive an obligation which has been discharged by payment is circumscribed by certain limitations. It cannot be exercised to the prejudice of others whose rights were acquired prior to such revival.
The defendant proposes that because of the failure of the complainant to have instituted a foreclosure suit or other proceeding to determine the priority of the mortgage liens during a period of years, she is in laches and should now be estopped from asserting the priority of her mortgage. Laches is more than mere lapse of time; its essence is estoppel. In the circumstances of the present case, the point is unsubstantial. Rau v.Doremus, 101 N.J. Eq. 809; 139 Atl. Rep. 170; Niagara FireInsurance Co. v. Fitzsimmons, 101 N.J. Eq. 437;139 Atl. Rep. 523; Wilson v. Stevens, 105 N.J. Eq. 377, 387;148 Atl. Rep. 392.
Counsel for the defendant accentuates the averment that the defendant procured the bond and mortgage for a valuable consideration and without notice of the circumstances surrounding its previous assignment to Mrs. Garzio. Although unessential to the solution of the question presented for decision, it may be appropriate to add that in a panoramic view *Page 114 
of all the circumstances, this insistence of lack of notice does not emerge from a shadow of doubt. Notice in its legal conception does not necessarily imply actual knowledge.
In the practical affairs of life, there is a broad distinction between the lack of omniscience and a venturesome closing of one's eyes. The defendant is a member of the bar. Before obtaining the assignment of the mortgage and the deed, he caused an examination of the record title of the premises to be made. This informed him of the unsatisfied mortgage of the complainant and the date of its execution. From the title examination he learned that the bond and mortgage he was about to purchase were delivered as long ago as 1913 to a fire insurance company, which retained the encumbrance until December, 1933. The mortgage itself imparted to him the obligation of the mortgagors to keep the building insured for the benefit of the mortgagee against loss by fire. He inspected the premises and observed that a building had once been erected there and had been demolished. Mrs. Garzio assured him that the dwelling house had been totally destroyed by fire. He knew that it had never been restored. Strangely, the assignment to Mrs. Garzio noticeably did not embody a covenant that any amount remained due on the bond. The defendant frankly admits that he perused the file in the Chancery cause to which reference has been made and from it received notice of the alleged existence of a deed of conveyance of the premises executed by Luigi Garzio. The latter acknowledged that he had not paid any interest on the bond for a period of eight years, and it was known that the holder of the bond and mortgage was the wife of the owner of the premises. Moreover, the supposed obligation was offered to the defendant at a price less than one-half of its face value. True, an assignee of a mortgage is under a duty to inquire of the mortgagor or owner of the equity of redemption before taking an assignment of the bond and mortgage. Henion v. Monahan, supra. Circumstances, however, may demand as a matter of prudence a much broader range of inquiry. Tantum v. Green, 21 N.J. Eq. 364; Gale v. Morris,30 N.J. Eq. 285; Haslett v. Stephany, 55 N.J. Eq. 68;36 Atl. Rep. 498; Parker v. Parker, 56 Atl. Rep. 1094, 1100. *Page 115 
Did the defendant ignore or repudiate the rational inference that the Standard Fire Insurance Company had protected the security of its loan from depreciation by fire? A contrary supposition would be fantastic. Would not a reasonably circumspect individual (particularly an attorney) have suspected that perhaps upon the destruction of the house, the proceeds of the insurance were conducted to the mortgagee?
The information possessed by the defendant did not have the weakness of vague rumor. It related definitely to certain mattersin pais which were sufficient to impel a prudent person to enlarge his field of inquiry. Had an inquiry been addressed to the complainant who supposedly held a deed from Luigi Garzio or to the Standard Fire Insurance Company, and had it been pursued with ordinary diligence, it would have led to a discovery of the truth.
"If a purchaser or encumbrancer, dealing concerning property of which the record title appears to be complete and perfect, has information of extraneous facts or matters in pais, sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage or encumbrance, or respecting some outstanding interest, claim or right which is not the subject of record, and he omits to make a proper inquiry, he will be charged with constructive notice of all the facts which he might have learned by means of a due and reasonable inquiry." 2 Pom. Eq. Jur. 666 § 613.
In accord with the settled principles of law and upon considerations of justice and equity, the mortgage of the defendant must be subordinated to the lien of the mortgage of the complainant.
As against Luigi Garzio, the mortgage may have acquired new vitality upon its assignment to Mrs. Garzio or to the defendant, but it cannot be restored to its lost priority.
Let the cause now be referred to a master to settle the priorities in accordance with the conclusion here expressed, and all further equities be reserved until the submission of his report. *Page 116