[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 503 
This is a suit to foreclose a mortgage. Arlington Beach Company gave its mortgage in 1929 to Tradesmen's National Bank and Trust Company for $75,000 as accommodation collateral for a loan of $50,000 made to Cummings Brothers Company evidenced by the latter's promissory note endorsed by William H. Cummings and George S. Cummings (the latter now deceased). The Cummings were the principal owners and operators of each of these corporations. The mortgagor conveyed the premises to the accommodated corporation which then were sold to defendants' grantor under execution upon a judgment against the Cummings Brothers Company and the Cummings. Thereafter the balance due on the Cummings Brothers Company note loan, for which the mortgage was given as accommodation collateral, was reduced to judgment against the debtor corporation and the Cummings as endorsers.
In this posture in 1940, no payment of principal or interest ever having been made, the mortgagor, through its counsel, obtained for a consideration of $500 a warrant of cancellation of the mortgage from the bank-mortgagee and judgment creditor of the Cummings Brothers Company and the Cummings. The bond, mortgage and discharge were retained for several years by the attorneys and the discharge not recorded, in order to secure payment of their fee due from the mortgagor Arlington Beach Company. It was in this period that defendants came into the fee to the premises, and that the bank-mortgagee informed defendants of the satisfaction and discharge of the mortgage held as accommodation collateral for the balance due on its note loan to the Cummings Brothers Company and the Cummings then reduced to judgment.
In 1944 William H. Cummings (who since about 1939 had had no interest in Arlington Beach Company — at least since before the mortgage discharge was obtained as related *Page 504 
above) paid the attorneys' fee due from the Arlington Beach Company for procuring the discharge of mortgage and persuaded the attorneys that they had made a mistake in getting the discharge, and that instead they should have secured an assignment of the mortgage to his straw man from whom he had borrowed the $500 paid for the discharge. Thereupon, the attorneys returned the mortgage discharge to the mortgagee and obtained an assignment of the mortgage in its place. The straw man then assigned the mortgage to Cummings' nominee, the plaintiff corporation in which Cummings has about a ninety per cent. and controlling interest.
I am convinced that the mortgage was effectively extinguished in 1940 by surrender of the bond and the mortgage and the execution and delivery of the discharge. So far as it affects the defendants, the effort to revive that mortgage in 1944 was a nullity. In the first place, the straw man assignee paid nothing for the mortgage — his transaction was one of borrower and lender as between himself and Cummings; in the second place, he took his assignment subject to all infirmities and equities in favor of parties acquiring their interests intermediate the execution of the mortgage and the date of the assignment; in the third place, William H. Cummings, whose nominee the straw man was, knew every circumstance relating to this mortgage from the moment of its creation to the moment of this attempted assignment. Mr. Cummings knew that the mortgage originated as an accommodation only, for him and the company that bore his name, and that the mortgage had completely served the single purpose for which it was given when the mortgagee-bank surrendered it for cancellation and executed a warrant to accomplish this end. The plaintiff stands in no better position than the straw man. Di Giovacchini v. Teich,133 N.J. Eq. 107, at p. 112 (Ch. 1943).
The assignment was obtained by a debtor for whose benefit the mortgage was created. He was obligated to protect the accommodating mortgagor from liability for his debt. Instead, for a nominal sum, he gained control of the mortgage and now tries to enforce it to the full extent of the indebtedness *Page 505 
which he still owes. In effect he is asking this court to allow him to resort, for his own profit, to use of the collateral which was put up as a matter of accommodation for him upon indebtedness which he has not satisfied. The right to resort to the collateral was exclusively the creditor-mortgagee's. The debtors, Cummings Brothers Company and the Cummings, had no rights under the mortgage, and they can acquire none. The debtors are obliged to exonerate it from being resorted to for satisfaction of their debt. A collateral mortgage must be applied "exclusively" to the purpose for which it is given. Cf. Neise v. Krumacker,136 N.J. Eq. 75, 79 (Ch. 1945); Atwater v. Underhill,22 N.J. Eq. 599, 604 (E. A. 1872); Andrews v. Torrey,14 N.J. Eq. 355, 358 (Ch. 1862).
Assuming that it could properly be said that the straw man had paid the mortgage debt and that it was the mortgagor who had requested the bank to make the assignment to him, the assignee could acquire no superiority over defendants. While in such circumstances the mortgagor would be estopped to controvert the assignee's rights, nevertheless a grantee who took title to the land intermediate the mortgage and its assignment is unaffected by the effort of the parties to give new vitality to the instrument. See Traphagen v. Lyons, 38 N.J. Eq. 613, 616 (E. A. 1884), and Di Giovacchini v. Teich, supra.
The instant case does not concern the position of a bona fide
assignee; the real assignee here was Cummings, not the straw party for Cummings, nor his nominee plaintiff. Every defense to the enforcement of the mortgage enures to the defendants as subsequent owners of the mortgaged premises.
Judgment of foreclosure is accordingly denied; counterclaimants are entitled to a judgment for cancellation. *Page 506