The Chancellor.
The bill is filed to foreclose a mortgage upon a lot in Jersey City, given by Torrey and wife to Thomas B. Oakley, of the city of New York, and by him assigned to the complainant. The mortgage bears date on the sixteenth of April, 1861, and is made to secure the payment of a bond of even date for $1800, payable on the sixteenth of June, 1861, with interest at seven per cent.
The answer of the mortgagor admits the execution of the bond and mortgage, but denies the existence of the indebtedness, and alleges that the bond is usurious, fraudulent, and void/
The first ground of defence relied upon by the mortgagor in his defence is, that the bond and mortgage were given to Secure a loan made upon a usurious contract. The answer alleges, and the evidence shows that the bond and mortgage were given as security for certain bills of exchange, drawn by the mortgagor, to his own order, upon Arthur, Burnham and Milroy, of Philadelphia, and which had been discounted by Oakley, the mortgagee, at usurious rates of interest. The time and mode in which the usurious interest was received, and the amount taken at each renewal of the bills, is stated in the answer with great minuteness and precision, and it is averred that the several sums so taken “ exceed the rate of seven dollars for the forbearance of one hundred dol *357 lars for a year, contrary to the form of the statute in such case made and provided.” Ye are not informed of what state the statute is thus violated. Nor is it stated where the contract was made. It is indeed, in several instances in the answer, alleged that the corrupt agreement was “ then and there made.” But no place had been previously mentioned in the bill except the city of Philadelphia, where the acceptors of the bill resided, and to which it is obvious that the reference was not intended. The place of the contract, as well as the sovereignty in violation of whose laws the illegal interest was taken, appears to have been inadvertently omitted.
In the absence of a more specific allegation, and of any statement of the place where the contract was made, it will be intended that the defence made by the answer is, that the contract is in violation of the statutes of this state; and to that defence the evidence will be limited.
If the defence relied on is, that the contract is usurious under the laws of any other state in which the contract may have been made, it must be so averred in pleading. This is the well settled doctrine of this court. Dolman v. Cook, Ante 56; Campion v. Kille, Ibid. 229.
The evidence of the mortgagor himself shows that the contract was made in the city and state of New York, where the mortgagee resided and had his place of business. It was essentially a New York contract, and its validity must be tested by the laws of that state. The facts that the mortgage was formally executed in this state, and that the mortgaged premises are within this state are not material. De Wolf v. Johnson, 10 Wheat. 367; Varick v. Crane, 3 Greens Ch. R. 128 ; Cotheal v. Blydenburg, 1 Halst. Ch. R. 17, 631; Dolman v. Cook, Ante 56.
The defence of usury, as established by the evidence, is not admissible under the pleadings in the cause. It is not within the issue.
The second ground of defence is, that the bond and mort *358 gage were given for a specific purpose, and that they have been and are fraudulently misappropriated by the mortgagee.
It is alleged in the answer, and shown by the evidence, that at the date of the mortgage, on the sixteenth of April, 1861, Torrey was indebted to Oakley, upon sundry bills of exchange drawn by Torrey, and discounted for his accommodation by Oakley, in the sum of $3457.93, and in the further sum of $453.05, for money lent and advanced, making the total amount of his indebtedness $3910.98. On that day he paid Oakley in cash $2140, leaving a balance of $1770.98. As collateral security for that balance, he gave his own bond and mortgage for $1800, which are the bond and mortgage in controversy in this suit. It is urged that the bond was not given exclusively as collateral security for the bills of exchange, but that it covers also the debt of $453.05 then due. There is no evidence of that fact, and it would be a most unreasonable and unnatural construction of the transaction. The presumption is that the cash paid was appropriated to the payment of the debt then past due. It was in fact so appropriated. Not a dollar of the money was applied to the payment of the bills of exchange, but was appropriated by Oakley to his own use. It must be assumed that it extinguished the debt then due. The answer expressly alleges that the bond and mortgage were given to secure the payment of the said bills of exchange, and for no other purpose whatever.
The mortgage was then given for a specific purpose; to that purpose exclusively it must be applied. Any other disposition of the security is a fraudulent misappropriation, against which the mortgagor would be entitled to relief in equity. Phillips v. Thompson, 2 Johns. C. P. 423.
The cases of Cornish v. Bryan, 2 Stock. 146, and of Westervelt v. Scott, 3 Stock. 80, which were cited upon the argument, are not in conflict with this principle. In neither of those cases was there a misappropriation of the mortgage, or a disposition of it in any wise inconsistent with the purpose for which it was executed. If the bond and mortgage *359 in this case had been delivered to the mortgagee, to raise money upon it for the benefit of the mortgagor, and the money had been thus raised upon the assignment in pursuance of the authority, it is not claimed that the assignee would be bound to see what disposition the mortgagee made of the money, or that his title would be affected by the misappropriation of the fund.
It appears, from the evidence, that all the bills drawn by the defendant, and discounted by Oakley, and for the balance of which the mortgage was given, are still outstanding. They -were all but one discounted for Oakley’s accommodation, and are now held by the Butchers and Drovers Bank of New York, and that one was discounted, and is now hold by the Artisans Bank. The evidence renders it probable that most of the bills had been discounted, and were held by the bank at the time the mortgage was executed. They have all been protested, and the banks look to Torrey for payment. The case, as regards Torrey, stands thus: he lost the entire amount for which the bills were drawn by the failure of the acceptors. He raised the amount to meet his engagements by getting the bills discounted - by Oakley at the rate of twenty-four per cent, per annum. He anticipated the maturity of the bills by paying more than half the amount in cash to Oakley, and by giving him this bond and mortgage as collateral for the balance. Oakley appropriated the money to his own use, assigned the bond and mortgage to a third party, transferred the bills of exchange to the bank, and obtained the proceeds, and leaves Torrey liable for the whole amount of the bills which are still outstanding and unsatisfied. A case of greater hardship on the part of the mortgagor, or of more palpable fraud by the mortgagee, it is difficult to imagine.
It is urged that the mortgage, by its terms, is forfeited; that the bond is past due; that the bills for which the mortgage was given as collateral security are outstanding, and that there is therefore no defence by Torrey to the foreclosure of the mortgage.
*360 If the mortgagee were himself before the court as complainant, or if the holders of the bills of exchange were here who may have an equitable claim to this security, so that the court could enforce the appropriation of the proceeds of the sale to the specific purpose for which the mortgage was given, that suggestion might be entitled to consideration. But a third party is before the court as complainant claiming title to this mortgage debt in his own right, and the court is asked to aid a fraudulent misappropriation of the fund without affording any protection to the mortgagor.
It is urged that Andrews, the complainant, is a bona fide assignee without notice; that the bond and mortgage, upon their face, contain no intimation of the purpose for which they were given, and that the complainant is therefore entitled to recover, notwithstanding the fraudulent misappropriation by the mortgagee. There is no evidence, other than the assignment itself, that the complainant paid any consideration whatever for the mortgage. It is in evidence that he is in fact the attorney and counsel of the mortgagee. It is a matter of total indifference, for the purposes of this suit, whether he is or is not a bona fide holder of the mortgage. If the assignment is colorable, it is obviously made with the •design of enabling Oakley to recover the amount of the mortgage without being compelled to apply the proceeds in satisfaction of the debt for which it is held only as security, and thus to effect a misappropriation of the fund.
If the complainant is a bona fide holder, he takes subject to all the equities subsisting against the mortgage in the hands of the mortgagee. Coles v. Jones, 2 Vern. 692; Davies v. Austen, 1 Vesey jun. 247; Murray v. Lylburn, 2 Johns. Ch. R. 441; Cornish v. Bryan, 2 Stock. 106; Woodruff v. Depue, Ante 168.
In either event he is not entitled to relief. The bill must be dismissed.