36 N.J. Super. 142 (1955)
115 A.2d 110
ATLANTIC SEABOARD COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THE BOROUGH OF SEASIDE PARK IN THE COUNTY OF OCEAN, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1955.
Decided June 16, 1955.
*145 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Walter Carson argued the cause for appellant Borough of Seaside Park.
Mr. W. Louis Bossle argued the cause for respondent (Mr. David Novack, attorney).
Mr. Carl Kisselman argued the cause for cross-appellant Arlington Beach Company.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Atlantic Seaboard Company filed its bill of complaint in the former Court of Chancery to foreclose a mortgage for $75,000, dated February 6, 1929, made by Arlington Beach Company ("Arlington") to Tradesmens National Bank and Trust Company of Philadelphia ("Tradesmens Bank"). Plaintiff alleged that it held the bond and mortgage as an assignee, and that the full amount of the principal, with interest from the date of the mortgage, was due.
The defendant Borough of Seaside Park, owner of the mortgaged property, filed an answer and defenses, and also a counterclaim asking that the mortgage be cancelled and discharged of record.
*146 Upon the trial of the cause in the Chancery Division, the court found in favor of defendant borough and rendered judgment, inter alia, (b) that the plaintiff's action be dismissed, and (c) that the mortgage be cancelled of record (3 N.J. Super. 501 (1949)).
On appeal the Appellate Division held that Arlington was a necessary party to the cause and reversed the judgment, except that as to part (b) dismissing the action the court directed that the cause be remanded to the Chancery Division with instructions that plaintiff join Arlington as a party, and that upon such joinder the Chancery Division should take further proceedings; should plaintiff fail to make the company a party, as directed, the judgment of dismissal would be affirmed (8 N.J. Super. 188 (1950)).
Plaintiff then sought certification to the Supreme Court, which was denied.
Thereafter Arlington, having been brought in by service of summons and complaint, filed an answer and counterclaim, and also a cross-claim against the defendant borough, in which it claimed the mortgage should have been assigned to it and further claimed the right to foreclose for the amount thereof, with interest. The borough thereupon filed its answer setting up several defenses, as well as a counterclaim against Arlington demanding the mortgage be declared void and cancelled.
Pursuant to a further order of the Chancery Division, William H. Cummings, Cummings Brothers Company and the Tradesmens Bank were also brought into the case by service of summons and complaint. They filed no answers, and their defaults were entered. A letter in the nature of a disclaimer of interest in the case was received by counsel for plaintiff from the attorney for Tradesmens Land Title Bank and Trust Company, successor by merger to certain banks, including the Tradesmens Bank.
Upon the retrial of the cause the Chancery Division rendered judgment of foreclosure in favor of plaintiff for the sum of $188,175, representing the principal amount of the bond and mortgage ($75,000) and interest from the date thereof, February 6, 1929, with costs, to be raised and paid *147 out of the mortgaged premises, and plaintiff's costs upon the former appeal. The counterclaim of defendant borough and the cross-claim of defendant Arlington were dismissed, without costs.
The borough appeals from the whole of the judgment, except the dismissal of the cross-claim of defendant Arlington. Arlington appeals only from that part of the judgment dismissing its cross-claim against the borough.

I.
With few exceptions, the facts are not in dispute. We set them out at some length in order fully to develop the factual basis for our application of equitable principles.
For almost half a century defendant William H. Cummings ("Cummings") has been engaged in the real estate development business, part of the time in association with his brother George S. Cummings, who died in 1932. They were incorporated as Cummings Brothers Company. Cummings testified that in the course of his business career he made use of some 35 different corporations, the names of four of them including the words "Cummings Brothers." His counsel for over 30 years was E.G.C. Bleakly, Esq., of Camden.
Three of the corporations had some part in the events leading up to the present litigation. They are parties to the action:
(1) Cummings Brothers Company, whose stock was owned in equal parts by Cummings and his brother George. The company lost its charter in 1937, and since then Cummings has been acting as surviving director and statutory trustee.
(2) Arlington Beach Company, in which the controlling stock interest was held by Cummings and his brother George until the death of the latter in 1932. In the settlement of George's estate all of the stock of the company was turned over to his widow who held it until 1939 and then transferred it to Cummings' wife. In January 1947 she gave all the stock to her two sons, William Jr. and Cyrus, to help set *148 them up in business. They still own the stock and are conducting the business.
(3) Atlantic Seaboard Company, the nominal plaintiff in the case. Its stock is owned by Cummings, but a few shares are held by his sons, William Jr. and Cyrus, "just to qualify" them.
Early in 1929 Tradesmens Bank made a loan of $50,000 on the promissory note of the Cummings Brothers Company, endorsed personally by its stockholders, William H. and George S. Cummings. As collateral security Arlington on February 6, 1929 gave its bond and mortgage to the bank as an accommodation to the Cummings Brothers Company, William H. Cummings and George S. Cummings. William signed both as secretary of the company. Neither instrument mentions the note or indicates the collateral nature of the transaction. The bond was for $150,000, conditioned upon the payment of $75,000 within one year with interest, and was in the usual form. The mortgage covered a tract of land under the waters of Barnegat Bay in the Borough of Seaside Park, Ocean County, and was duly recorded in the office of the County Clerk. This is the mortgage which plaintiff, as assignee, seeks to foreclose in the present action. Nothing has ever been paid on the bond.
On October 22, 1929 Arlington conveyed the land described in the mortgage, together with other lands, to Cummings Brothers Company, one of the accommodated parties. The deed recites one dollar and "other valuable consideration," contains no reference to the mortgage, and ends with a covenant of general warranty in favor of the grantee, its successors and assigns.
The amount due Tradesmens Bank on the $50,000 Cummings loan was reduced to $38,500 as of July 17, 1930, on which date a one-month renewal note was made by Cummings Brothers Company and endorsed by the two Cummings brothers personally. The note was in collateral form, provided for the liquidation, by sale, of pledged securities, and recited the Arlington mortgage as the collateral. The note was not paid on its due date, whereupon the bank proceeded to obtain *149 judgments in the Pennsylvania courts against Cummings Brothers Company and William H. Cummings personally for the amount of the note and interest. Similar judgments were obtained in New Jersey. The judgments have not been paid.
Cummings Brothers Company and William H. Cummings were at this time also indebted to Ocean County Trust Company, of Toms River, N.J. The Trust Company sued and recovered a judgment in our former Supreme Court. Execution on the judgment issued in 1933 to the Sheriff of Ocean County, who levied on the land described in the mortgage held by Tradesmens Bank and then owned by Cummings Brothers Company. The Trust Company bought in this land, together with other lands, at the sheriff's sale and received a deed dated June 17, 1933. In October 1939 Cummings, as surviving director and statutory trustee of Cummings Brothers Company, executed a quitclaim deed to the Trust Company with respect to all the lands so conveyed. The deed recites payment of a valuable consideration.
Towards the close of 1939 Cummings, whose wife then held all the Arlington stock, decided he would try to get the Arlington bond and mortgage from the Tradesmens Bank. Being indebted to the bank on its judgments against him, he did not take the matter up directly but put it in the hands of Bleakly, his attorney. Bleakly testified that Cummings' instructions were simply "to get the mortgage." Cummings says he told him to get an assignment of the mortgage, but this is denied by Bleakly.
On December 2, 1939 Bleakly, as attorney for Arlington, wrote a strong letter to the bank denying the validity of the bond and mortgage, accusing Cummings of having acted in a dual capacity and wrongfully procuring the execution of the instruments, demanding that the bank cancel the mortgage and deliver up the accompanying bond, and threatening legal proceedings if the demand was not met. He offered a nominal $100 on behalf of Arlington. Ensuing negotiations resulted in an amicable settlement, whereby it was agreed that $500 would be paid the bank for the surrender of the bond and mortgage, together with an executed warrant of cancellation. *150 This arrangement was carried out early in January 1940. Upon receiving the bond, mortgage and warrant, Bleakly put them into his office files. On August 7, 1941, more than a year and a half after he had made his original demand upon the bank for a cancellation in the belief that the mortgaged land was still owned by Arlington, Bleakly wrote Cummings:
"I forgot to mention about that mortgage that it was not assigned. It was in December, 1939, that I took this matter up with the attorneys for the Tradesmens Bank and I got them to execute a cancellation of the mortgage but it was not written on the mortgage but annexed to it.
Query: I think they would assign the mortgage to the Arlington Beach Company, but I am afraid they would not assign it to any other company. Who is it that holds title to the property at the present time? Why could we not convey the property to Casco Holding Company and let the mortgage be assigned to Arlington Beach Company? * * *
Before I take this matter up with these attorneys, let me have your views as to this proceeding.
You see, if the mortgage is now assigned to the Arlington Beach Company and they own the property, then the mortgage would merge with the title."
Just what it was that led to this writing is not made clear by the record. However, nothing seems to have come of the letter; for almost three years neither Cummings nor Bleakly, so far as appears, did anything in connection with the bond, mortgage and warrant to discharge. The instruments remained in Bleakly's office. He testified he held onto them because he had not been paid for his services, which were charged to Arlington on the books of the Bleakly firm.
On March 21, 1942 Ocean County Trust Company conveyed the lands in question to one Burdge, Borough Clerk of Seaside Park, who, together with his wife, by deed of the same date, conveyed it to the borough.
A little more than 4 1/2 years after Tradesmens Bank had surrendered the bond and mortgage, with the executed warrant to discharge, Cummings called at the Bleakly office for the papers and paid the bill due for professional services, using a check of plaintiff Atlantic Seaboard Company, signed by *151 him as treasurer and dated July 19, 1944. Upon inspecting the papers which Bleakly then turned over to him, Cummings said: "I wanted an assignment. I didn't want a cancellation." He wanted the assignment made to one Collopy, "the straw man that I had act for me or Atlantic Seaboard Company." Bleakly testified that on this occasion Cummings told him Arlington did not have title to the mortgaged property, and that the $500 paid the Tradesmens Bank had been put up by Collopy.
Bleakly thereupon undertook the task of inducing the bank to take back its warrant to discharge the mortgage of record and to substitute an assignment to Collopy. On July 25, 1944 he wrote the bank's attorney explaining in rather labored fashion that he had learned that the $500 sent the bank in 1940 had not been put up by Arlington but by Collopy, and that an assignment of the mortgage to Collopy was necessary to secure repayment to him and to get Bleakly out of his dilemma. Enclosed was the bank's executed warrant to satisfy the mortgage of record, together with a form of assignment of the bond and mortgage by the bank to Collopy. The bank's attorney complied with the request, got the bank to execute the assignment on August 1, 1944, and sent it to Bleakly who then turned it over to Cummings.
Collopy, who admittedly was acting as a straw man in the transaction, assigned the bond and mortgage to Cummings' corporation, plaintiff Atlantic Seaboard Company, on October 30, 1944. Cummings subsequently caused the present foreclosure action to be instituted  not to recover the $500 for whose repayment the assignment had been obtained as security for Collopy, but to recover the full principal sum of $75,000 stated in the bond and mortgage, with interest from the date of their execution, February 6, 1929. Upon the retrial the judgment of foreclosure for $188,175 and costs, here on appeal, was entered in plaintiff's favor.

II.
Arlington was made a party defendant in order that it might raise such defenses as were available to it, and this at *152 the insistence of plaintiff in the previous litigation. 8 N.J. Super. 188, 191 (App. Div. 1950). The present appeal reveals for the first time the identic interests of plaintiff and Arlington. Plaintiff frankly states:
"It should be emphasized at the outset that there are no real differences between the plaintiff and Arlington Beach Company. The differences which the pleadings disclose were created for the express purpose of pointing up the original error, not for the purpose of creating any controversy. The two corporations always have been Cummings' corporations, participated in and controlled at various times by William H. Cummings and his brother, George S. Cummings, or their respective families. At the present time, since William H. Cummings controls the plaintiff and his sons control Arlington Beach Company, neither corporation is contesting the rights of the other. Consequently, the mortgage and the right to foreclose it belongs either to the plaintiff or to Arlington Beach Company. It makes no real difference in whose favor that right is decreed. * * *"
Arlington joins in the brief of plaintiff, stating there are no disputes or differences between them. It is content with the judgment as it stands; if there is any error therein, "it exists only in that plaintiff, instead of Arlington Beach Company, was declared the owner of the mortgage and entitled to foreclose it." Any alterations in the judgment should be limited to a remand with directions that judgment be entered in favor of Arlington as cross-claimant and that the prayer of its counterclaim be allowed.
In our view, Cummings, Cummings Brothers Company, Arlington and plaintiff all constitute, and have always constituted, the same proprietary interest. All of them are identified with Cummings, and this has always been true whether or not at various times Cummings' wife, his sister-in-law, or his sons had some degree of interest in Arlington. Cummings is concededly the real party in interest in plaintiff Atlantic Seaboard Company.
Defendant borough first argues that the bond and mortgage of Arlington were void at the very moment of their execution because there is no evidence that Tradesmens Bank made the Cummings' loan pursuant to any agreement with Arlington, or that the loan was made at the instance or request of Arlington, or that Arlington was indebted to the *153 bank or received the proceeds of the loan or any part of it. We may well suspect that Cummings alone was responsible for the entire arrangement, but absent proof to show that the accommodation bond and mortgage was ultra vires the corporation, we cannot determine the appeal on the first ground advanced. The burden of proof was on the municipality to establish the allegations underlying its charge of ultra vires action.
The established rule in this State is that the assignee of a bond and mortgage takes them subject to all equities available between the assignor and the original obligor, mortgagor, owner of the mortgaged premises, and others having interests as junior encumbrancers. Conover v. Van Mater, 18 N.J. Eq. 481, 484 (Ch. 1867); Magie v. Reynolds, 51 N.J. Eq. 113, 116 (Ch. 1893); Di Giovacchini v. Teich, 133 N.J. Eq. 107, 112 (Ch. 1943).
The Chancery Division and this court have heretofore concluded that the mortgage was effectively extinguished in 1940 when Tradesmens Bank, acting upon the letter sent by Bleakly, surrendered the bond and mortgage and executed and delivered the warrant to discharge in consideration of the payment of $500. We agree. We are convinced, as was this court in its earlier consideration of the matter, that Bleakly unquestionably represented Arlington in securing the surrender and warrant. His testimony, elicited on plaintiff's cross-examination, was explicit on this point. It was not simply that he "thought" Cummings was acting on behalf of Arlington; Cummings expressly told him he was. In writing to the bank Bleakly, as stated in his letter, was actually speaking for Arlington.
So far as it affects defendants, the effort to revive the mortgage in 1944 was a nullity. The letter written by Bleakly in July of that year, by which he got the bank to take back the warrant to discharge and to execute instead an assignment of the bond and mortgage was, of course, completely inconsistent with his first letter in 1940. His explanation  that he had "made a mistake" and should have taken an assignment in order to protect Collopy who advanced *154 the $500 paid the bank  though tenuous was sufficient to move the bank to comply with his request. The second letter is a far cry from the first, which flatly charged that the security had been given in fraud of Arlington and was ultra vires the corporation.
Neither Arlington, the obligor-mortgagor, nor the borough, present owner of the land, authorized the revival of the bond and mortgage. The record is devoid of proof that Cummings possessed any authority whatsoever to change Arlington's position by breathing new life into the bond and mortgage. As was said by this court on the former appeal, it is understandable why Arlington might have wanted to secure the return of the mortgage for cancellation in 1940. Its bond for $150,000 was outstanding, and discharge of the mortgage would have terminated that liability. On the other hand, the assignment had the effect of keeping its liability alive. The present position of Arlington, now owned and managed by Cummings' two sons, is that the assignment should have gone to it, and not to Cummings' straw man, Collopy.
A bond and mortgage, once satisfied, cannot be revived without the authorization of the obligor upon the bond and the owner of the estate in the land. Atwater v. Underhill, 22 N.J. Eq. 599, 603-604 (E. & A. 1872); Di Giovacchini v. Teich, 133 N.J. Eq. 107, 113 (Ch. 1943).
It is admitted that plaintiff is the corporate alter ego of Cummings. He has known of every circumstance relating to the bond and mortgage from the moment of their creation to the time of their attempted assignment. As the Chancery Division observed following the original hearing, Cummings knew that the mortgage came about as an accommodation only, for himself and the company that bore his name. Further, he knew that the mortgage had completely served the single purpose for which it was given, when Tradesmens Bank, the mortgagee, surrendered it for cancellation and executed a warrant to accomplish that end. Plaintiff stands in no better position than Cummings or his straw man, Collopy.
*155 On long-established equitable principles, Cummings, who is actually the plaintiff here, has no standing in a court of equity to foreclose the mortgage. It was for his benefit that the mortgage was created. It was his duty as an accommodated party to exonerate, indemnify and save harmless the party that accommodated him, Arlington. Instead, he obtained control of the mortgage for a nominal sum and now tries to enforce it to the full extent of the indebtedness he still owes. What he is actually asking a court of equity to do is to allow him to resort, for his own profit, to the use of the collateral which was put up as a matter of accommodation for him upon an indebtedness which is not yet satisfied.
The legal relation between an accommodated party and the accommodating party is one of principal and surety. Jones on Collateral Securities (3d ed.), § 517(a), p. 619. The accommodated party (principal) must exonerate the accommodation party (surety). As was said in Irick v. Black, 17 N.J. Eq. 189, 197 (Ch. 1864), a court of equity will interfere to compel payment by the principal, rather than the surety, in order to enforce the performance of the obvious duty of the principal to protect the surety from a needless burden, and to prevent circuity of action. And see Holcombe v. Fetter, 70 N.J. Eq. 300 (Ch. 1905).
As we have already stated, if Arlington, as the obligor-mortgagor, has an effective equitable defense against foreclosure by Cummings, the same defense may be asserted by the defendant borough, owner of the mortgaged property and successor in right and title to Arlington and the Ocean County Trust Company. The circumstances of the instant case are peculiarly such as to call for the assertion by the borough of any defense that could be raised by Arlington. When Arlington, shortly after the accommodation bond and mortgage were executed, conveyed the mortgaged property to Cummings Brothers Company, one of the accommodated parties, it did so by deed of general warranty in favor of its grantee, its successors and assigns. Cummings signed that deed as president of Arlington. The covenant of general warranty ran with the land. Kellog, Ex'r. v. Platt, Ex'r., 33 *156 N.J.L. 328, 330 (Sup. Ct. 1869); Greenwood v. Robbins, 108 N.J. Eq. 122 (Ch. 1931). Were the borough to lose the property by foreclosure, Arlington would by virtue of its covenant be liable to it in damages. It therefore is of material advantage to Arlington that the borough, as present owner of the mortgaged land, should assert all defenses against the foreclosure that Arlington could.
There is another reason why plaintiff may not have the aid of a court of equity. It is entirely clear that Cummings, through Bleakly, practiced a most reprehensible kind of misrepresentation on Tradesmens Bank. The mere fact that the bank does not presently wish to be further involved in the matter, having written off its investment as a bad one "in view of the bankruptcy of Cummings Brothers Company" (as stated in a letter to plaintiff's present attorney before the action came on for rehearing), does not affect the consideration that Cummings' entire conduct represents an unconscionable effort to reacquire the property which, as against him, in good conscience belongs to the borough rather than to him. Through Bleakly, Cummings in 1940 made certain definite statements to the bank in support of the demand for a cancellation, and in 1944, again through Bleakly, he withheld pertinent information from the bank, such as the fact that Bleakly was receiving instructions from him, that Collopy was acting as his straw man, and that what really precipitated the request for an assignment was the discovery that Arlington did not hold the property and therefore the warrant to discharge the mortgage would not serve his purpose. In short, Cummings does not come into court with clean hands.
Disregarding for the moment our conclusion that the mortgage was effectively cancelled in 1940, and fixing our attention upon the assignment only, the rule is well settled that where a mortgage is made or assigned for a specific purpose, it is a fraudulent misappropriation to use it for any other purpose.
"* * * Where such instruments [a bond and mortgage] are assigned for a specific purpose, they must be applied exclusively to *157 that purpose and any other unauthorized disposition of them is essentially a fraudulent misappropriation." Neise v. Krumacker, 136 N.J. Eq. 75, 79 (Ch. 1945).
Accord, Andrews v. Torrey, 14 N.J. Eq. 355 (Ch. 1862); Atwater v. Underhill, 22 N.J. Eq. 599 (E. & A. 1872).
This court, in its earlier opinion (8 N.J. Super. 188, at page 192), quoted the following language from Kem Products Co. v. Levin, 117 N.J. Eq. 560, 564 (Ch. 1935):
"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience. Pom. Eq. Jur. Sec. 404.
A court of equity will not countenance inequity. The conduct of the complainant herein offends the dictates of natural justice. Whatever may be its rights and whatever use it may make of them in a court of law, it will be held remediless in a court of equity. * * *"
Although Arlington has been brought in as defendant, nothing presented at the retrial aids plaintiff's case. As a matter of fact, the position taken by Arlington in its answer is that Cummings acted inequitably in procuring the assignment in question.
We do not consider that Arlington has any standing to foreclose the accommodation bond and mortgage against the defendant borough, its successor in title to the property, as by its cross-claim it seeks to do. Although the Chancery Division on retrial dismissed Arlington's cross-claim, it seems to have approved the theory upon which the claim was founded, for it said that "an accommodating party who mortgages his property, [and] thereafter sells the equity of redemption or the fee subject to the mortgage, in effect is being deprived of some consideration for his property and the value of that consideration should be justifiably recovered by him on a foreclosure * * *." There is no factual basis for the application of this proposition. Arlington voluntarily conveyed the property to Cummings Brothers Company, one of the accommodated parties. The deed did not require the *158 company to assume the mortgage; as stated, the deed contained a covenant of general warranty whereby Arlington insured the company against loss of title by reason of the accommodation mortgage made for its benefit. In return for the conveyance, Arlington received the sum of one dollar and "other valuable consideration," the nature and amount of the latter not being indicated. Whatever that consideration might have been, Arlington was content with it. Thus, the factual situation is not one in which an accommodating party who has sold the mortgaged premises has been "deprived of some consideration for his property." Actually, it does not appear that Arlington has sustained any loss whatsoever as a result of having made the accommodation bond and mortgage, but had it sustained such loss it would be the legal and equitable duty of the accommodated parties to have indemnified and saved Arlington harmless to the full extent of the loss. Two of the accommodated parties are actually defendants in the cause, and subject to the judgment of this court.
There is no factual or legal basis under the circumstances of this case on which we could hold that the borough, purchaser of the mortgaged property from the Ocean County Trust Company, is equitably estopped from attacking the validity of the accommodation bond and mortgage. The mortgage was not assumed by any of the successive purchasers of the property  Cummings Brothers Company, Ocean County Trust Company (which bought it in at the sheriff's sale), Burdge, or the borough. It is also a fact that nothing in the mortgage, which was recorded, gave notice that it was made for accommodation. Finally, by its very deed to Cummings Brothers Company, made and recorded in 1929, Arlington generally warranted the title, not only to its grantee, but to the grantee's successors and assigns. The general rule is that a grantee of mortgaged premises who has not assumed the payment of the mortgage debt, and has purchased without any deduction from the price because of the mortgage, is not estopped from attacking the validity of the mortgage, even though he knew of the existence of *159 the mortgage at the time he accepted his deed. 37 Am. Jur., Mortgages, § 984, p. 318.
The principle of equitable estoppel cannot therefore be invoked against the borough. In fact, it operates the other way, against Arlington, which gave its conveyance of general warranty, to whose protection the borough is entitled. Were Arlington to be permitted to foreclose the mortgage and divest the borough of its title, it would, under its covenant of general warranty, have to make good the loss to the borough. Equity does not look with favor upon such circuity of action.
Accordingly, the judgment here under appeal is reversed insofar as it granted foreclosure in favor of plaintiff and against defendants to raise the sum of $188,175 and lawful interest, and dismissed the counterclaim of the borough and Burdge for cancellation of the mortgage. The judgment is affirmed insofar as it dismissed the cross-claim of defendant Arlington, with prejudice but without costs. The matter is remanded to the Chancery Division for entry of a judgment dismissing the complaint and Arlington's cross-claim, and directing that the mortgage be cancelled, discharged and satisfied of record.