70 N.J. Super. 463 (1961)
175 A.2d 683
ISIDORE FELDMAN, PLAINTIFF AND THIRD-PARTY PLAINTIFF,
v.
URBAN COMMERCIAL, INC., AND OTHERS, DEFENDANT.
ISIDORE FELDMAN, THIRD-PARTY PLAINTIFF,
v.
THE TITLE GUARANTEE COMPANY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 27, 1961.
*467 Messrs. Brogan & Wolff, attorneys for plaintiff (Mr. Henry F. Wolff, Jr., of counsel).
Mr. Joseph A. Davis, attorney for defendant, Jersey City Redevelopment Agency.
Messrs. Carpenter, Bennett & Morrissey, attorneys for third-party defendant (Mr. Elmer J. Bennett, of counsel).
COLLESTER, J.S.C.
This is an action brought by the plaintiff, Isidore Feldman, to foreclose a mortgage held by him on a tract of real property described as the "business area," being a part of a larger tract of land set aside for urban development known as St. John's Project in Jersey City. The title to said property is vested in a corporation known as Urban Commercial, Inc. Only one of the defendants, the Jersey City Redevelopment Agency, contests the validity of the mortgage and has counterclaimed for a declaration that the mortgage is null and void for the reason that it is in violation of certain deed restrictions. Said defendant further seeks a judgment requiring said tract be reconveyed to it as a result of the breach of a contract entered into with the defendant, Urban Developers, Inc., and assumed by the defendant, Urban Commercial, Inc. The plaintiff, Feldman, has filed a third-party complaint against The Title Guarantee Company, which issued a title policy insuring said mortgage.
Prior to the trial upon the merits the parties by written stipulation submitted an agreed statement of certain facts and presented two questions for determination by Judge Victor S. Kilkenny upon motion and cross-motion for partial summary judgment, reserving other factual and legal issues for the trial of the cause. Feldman v. Urban Commercial, Inc., 64 N.J. Super. 364 (Ch. Div. 1960).
*468 At the outset of the trial, by agreement between the parties the third-party action was severed from this proceeding pending a determination of the issues raised by the complaint and counterclaim.
The facts presented to Judge Kilkenny on the cross-motions for summary judgment and which were undisputed at the trial of the cause are as follows:
Prior to October 25, 1955 Jersey City Redevelopment Agency (hereinafter called Agency) under the authority of Title I of the Housing Act of 1949, as amended, 42 U.S.C.A., sec. 1441, et seq., and of the Urban Redevelopment Law, N.J.S.A. 40:55C-1 et seq., acquired title to land in Jersey City commonly known as the St. John's Project Area (hereinafter called the Project Area). On October 25, 1955 Urban Developers, Inc. (hereinafter called Developers) entered into a redevelopment contract with Agency to develop the Project Area.
On June 11, 1956 Agency conveyed two tracts of the Project Area to Developers, one tract to be developed as a residential area and the other to be developed as a business area. On said date Developers by letter requested the permission of Agency to reconvey the business area to another corporation, Urban Commercial, Inc. (hereinafter called Commercial). The stockholders in Developers and Commercial were identical. Commercial by letter on said date informed Agency of its intention to take title to the business area; that it was aware of the terms of the redevelopment contract, and that it assumed all the obligations therein set forth. Agency on said date consented to the transfer, whereupon Developers conveyed the business area tract to Commercial.
On said date Commercial executed and delivered a mortgage note in the face amount of $450,000, "or so much thereof as may be advanced," secured by a mortgage upon the business area of the same date to the plaintiff, Isidore Feldman. Agency did not give its written consent to the making of said mortgage.
*469 On said date plaintiff advanced on account of the mortgage $250,000, which was paid over to Agency as the consideration for the conveyances of the residential and business tracts above mentioned.
Thereafter, between August 22, 1956 and December 14, 1956, the plaintiff made additional advances on account of the principal sum of said note and mortgage, totaling $100,000.
Prior to April 2, 1958 plaintiff's mortgage was past due and was in default both as to principal and interest, and on said date plaintiff entered into an extension agreement with Commercial, extending the due date to January 11, 1959. By the terms of said extension agreement Commercial agreed that the amount of principal to become due on January 11, 1959 should be increased from $350,000 to $392,000.
On October 23, 1959, Commercial being in default of its obligations to pay principal and interest due and in payment of municipal taxes due against the mortgaged premises, the plaintiff filed his complaint to foreclose his mortgage.
On February 12, 1959 both Developers and Commercial were in default of their obligations provided for in the redevelopment contract with Agency and of the covenant contained in the deeds for said properties which required them to complete all of the buildings and improvements in the Project Area within 32 months from the date of conveyance. On said date the plaintiff knew that the buildings and improvements had not been completed.
On March 20, 1959 Agency adopted a resolution declaring Commercial to be in default and so notified Commercial. No notice of such default was given to the plaintiff prior to August 27, 1959.
On July 22, 1959 Agency purchased all of the right and interest of Developers in its contract of October 25, 1955 at an execution sale conducted by the Hudson County sheriff following the entry of a judgment obtained by Agency.
*470 The first question submitted to Judge Kilkenny on the motions for partial summary judgment was:
"A. Whether the mortgage transaction between Commercial and plaintiff was a transfer or conveyance in violation of the terms, conditions and covenants of the contract and deeds entitling Agency to compel a reconveyance of the premises to it unencumbered by any lien of plaintiff's mortgage?"
The court held that the answer to the foregoing question was:
"No, especially at this time."
The deeds to the property conveyed and the redevelopment contract contained the following provision:
"The party of the second part, for itself, its successors and assigns further covenants not to sell, lease, transfer or convey any of the land and premises hereinbefore described prior to the actual completion of all of the buildings and development operations as provided in the said Redevelopment Plan and pursuant to the agreement between the parties herein, without prior written consent of the party of the first part, its successors and assigns." (Emphasis supplied)
Judge Kilkenny held that the mortgage transaction did not violate the terms, conditions, restrictions and covenants of the redevelopment contract and the deeds delivered pursuant thereto, and that the mortgage transaction, "as it now stands," did not entitle Agency to compel a reconveyance of the premises to it unencumbered by the lien of plaintiff's mortgage. He held that if plaintiff proceeds with the foreclosure to execution sale and a transfer of title thereunder, such transfer would constitute a violation of the terms, conditions, restrictions and covenants in the said contract and deeds, if in fact the defendant Agency did not consent to, acquiesce in, ratify or approve the mortgage transaction.
The second question submitted to Judge Kilkenny on the motions for partial summary judgment was:
"B. Whether the default against the terms, conditions and covenants of the contract and deeds relating to the time for completion of construction *471 entitles Agency to compel a reconveyance of the premises to it, unencumbered by any lien of plaintiff's mortgage?"
The court held that the answer to the foregoing question was a qualified "yes," but subject to an equitable lien against the property in favor of the plaintiff to the extent that his money has been used for the acquisition of this property.
It is conceded by the parties that the sum of money paid to acquire the business area was $148,254.59; hence the decision of Judge Kilkenny held that plaintiff was entitled to an equitable lien against said business area in said amount.
Following the decision of Judge Kilkenny on the motions for partial summary judgment, the cause came on for a trial on the merits. It is conceded by all parties that insofar as this court is presently concerned, Judge Kilkenny's determination is the "law of the case."
Upon the trial of this cause upon the merits, limited to the issues reserved by the parties upon their motions for partial summary judgment, the following issues remained to be determined upon the evidence presented to this court:
1. Is Agency estopped from attacking the validity and plaintiff's right to foreclose his mortgage by reason of Agency's knowledge of the making thereof, its acquiescence therein, laches, and waiver of its purported right to require its consent to the making of such a mortgage?
2. The amount due on plaintiff's mortgage.
3. Whether plaintiff was an innocent mortgagee without notice.
4. Whether plaintiff comes into this court with clean hands.
5. The rights of the plaintiff, if any, as effected by a revision of the redevelopment plan effected in February, 1960.

I.
The primary issue raised by the plaintiff in answering Agency's contention that plaintiff violated the terms of the restrictive covenant against a transfer and conveyance of the *472 property contained in the contract and deeds is that Agency is estopped to deny its consent to the making of the mortgage. Plaintiff contends that Agency is estopped by reason of (a) knowledge on the part of Agency of the execution of the mortgage, (b) consent to the making of the mortgage, (c) waiver, and (d) laches.
The evidence shows that sometime before the title closing and execution of the mortgage on June 11, 1956, Monroe Winston, a New York attorney who represented the plaintiff and Developers in the acquisition of the Project Area, discussed plans for the closing with Bernard German, the attorney representing Agency, by telephone. In the course of these conversations Winston discussed the necessity of separating the conveyance of the Project Area into two separate deeds of conveyance, one for the business area and one for the residential area. Winston informed German of the intention to place a mortgage on the business area, although no amount of such a mortgage was mentioned. German says he does not recall a conversation about such a mortgage and states that if Winston referred to a mortgage in such conversation, he assumed it related to an F.H.A. construction mortgage on the property.
The evidence shows that at the closing of title, held at Agency's office in Jersey City, no effort was made to conceal the fact that a mortgage was being given by Urban Commercial, Inc. on the business area. Two deeds conveying the separate tracts were executed and delivered by Agency to Developers; Developers thereupon conveyed the business area to Urban Commercial, Inc. and the latter made and delivered its mortgage to the plaintiff. While there is no credible evidence that the members of Agency were aware of the execution of such a mortgage, it is quite obvious that German, Agency's counsel, was aware that a mortgage transaction was taking place. The check, delivered over on behalf of Developers to Agency in the amount of $250,000 in payment of both the commercial and business tract, bore an endorsement "Payment Approved" and the signatures below *473 of Urban Developers, Inc. and Urban Commercial, Inc. Winston testified that he explained at the time to German he had secured both endorsements because he thought both corporations should approve the delivery of the mortgagee's check to Agency, since it was being given in payment of the consideration for the sale of both tracts.
German admitted that shortly after the closing he learned at the Hudson County Register's office that a mortgage loan of $450,000 and "so much thereof as may be advanced" had been made by Feldman to Commercial and that thereafter he advised John J. Harris, executive director of Agency, of the recording of such a mortgage. Harris denies any knowledge of a mortgage until he was so advised by German.
Both German and Harris admit that they never questioned the validity of the mortgage transaction and there is no evidence that either reported to the members of Agency, collectively or individually, that such a mortgage had been executed. German admittedly never advised anyone that the foreclosure of such mortgage would constitute a violation of the restrictive covenant contained in the redevelopment contract and the deeds of conveyance.
It is clear that neither Agency nor anyone on its behalf raised the issue that a foreclosure of plaintiff's mortgage would violate the restrictive covenant in the contract and deeds, until Agency filed its answer and counterclaim in the present action.
The plaintiff contends that if Agency objected to the placing of the mortgage on the ground that a foreclosure would violate the restrictive covenant, it had a duty to speak out but did not do so, and that as a result plaintiff continued to advance additional money on account of the principal of such mortgage. Plaintiff contends that Agency by its conduct has acquiesced in the mortgaging of such tract; that by such conduct it has waived its right to object to the validity and enforceability of the mortgage; that its delay until this late date in attacking the mortgage is barred by laches. It is further plaintiff's contention *474 that knowledge on the part of German, Agency's counsel, and Harris, its executive director, constituted notice to Agency.
3 Pomeroy's Equity Jurisprudence (5th ed.), sec. 804, p. 189, states:
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."
See Bayonne v. Passaic Consolidated Water Co., 98 N.J. Eq. 174, 177 (Ch. 1925).
The following are the essential elements which must enter into and form a part of an equitable estoppel in all of its phases and applications: (1) there must be conduct  acts, language, or silence  amounting to a representation or a concealment of material facts; (2) these facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it; (6) he must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party's being permitted to repudiate *475 his conduct and assert rights inconsistent with it. Ibid., sec. 805, p. 191. See also Musconetcong Iron Works v. D.L. & W. Ry., 78 N.J.L. 717 (E. & A. 1909); Central R.R. of N.J. v. MacCartney, 68 N.J.L. 165 (Sup. Ct. 1902).
In the case sub judice the conduct of Agency complained of by the plaintiff is its failure to object to the mortgaging of the business area as constituting a violation of the restrictive covenant of the contract and deeds in the event a foreclosure resulted.
The evidence is clear that members of Agency, either individually or collectively as a public body, were not informed that plaintiff's mortgage was to be executed at the closing of title. Nor is there any credible evidence that Agency was thereafter informed of the existence of the mortgage until after default of Developer's contract had occurred.
While there is no doubt that German, Agency's attorney, was advised by Winston that a mortgage of an undisclosed amount of principal was to be placed on the business area and that he knew such a transaction was taking place at the closing of title, I am of the opinion that German's knowledge does not estop Agency from attacking the enforceability of the mortgage through foreclosure. While German learned subsequently that plaintiff's mortgage on the business area had been recorded and so advised Harris, Agency's executive director, it is evident that both believed a mortgage on the tract was valid and made no report of the existence of such a mortgage to Agency.
German testified that it was his opinion, unexpressed to anyone at the title closing or thereafter until the litigation ensued, that a mortgage upon the business area would be valid, but upon a foreclosure Agency would not be obligated to assume the payment of a mortgagor's lien of an amount greater than the purchase price of the business area, namely, $148,254.59. It is clear that no one on behalf of the plaintiff, *476 Developers or Commercial sought an opinion from German concerning the validity or enforceability of such a mortgage before the closing. They relied solely upon their own knowledge of the terms of the contract and deeds and the advice of their own counsel.
One fact is obvious. German had no knowledge that it was plaintiff's plan to funnel all funds for the redevelopment program through the conduit of the mortgage on the business area. This plan was created, agreed upon and carried through by performance solely by plaintiff and his associates, who with him comprised Developers and Commercial.
Nor does anyone contend that authority had been granted to either German or Harris by Agency, authorizing them to waive any of the provisions of the redevelopment contract.
There was neither representation nor concealment of the existence of any facts on the part of German or Harris. In fact, both believed that plaintiff's mortgage was valid. Undoubtedly, German never gave any thought to the effect of the restrictive covenant upon the enforceability by foreclosure of such a mortgage. He was asked for no advice by plaintiff and gave none.
One of the elements of equitable estoppel is that knowledge concerning material facts represented or concealed must be known at the time when his conduct takes place, or else the circumstances must be such that a knowledge of the truth is necessarily imputed to him. 3 Pomeroy, op. cit., sec. 809, p. 216. This rule applies in its full force in cases where the conduct creating the estoppel consists of silence or acquiescence.
It is also an essential element of estoppel that the truth concerning the material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct was acted upon. If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that *477 it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment. 3 Pomeroy, op. cit., sec. 810, p. 219.
Here the plaintiff, Developers and Agency were all fully aware of the terms of the redevelopment contract; they planned the mortgage transaction; they never sought agency's approval to mortgage the property; they never sought the opinion of German, Agency's counsel, and they relied solely upon the legal advice of their own attorney. They did not rely upon the silence of German as an inducement for action on their part. It is absolutely essential that a representation or a concealment, whether consisting of words, acts, or silence, should be relied upon as the inducement for the action by the party who claims the benefit of the estoppel. 3 Pomeroy, op. cit., sec. 812, p. 230. No such reliance on the part of the plaintiff is shown by the evidence in this case.
It is thus apparent that the essential elements to constitute equitable estoppel were not established in the case at bar.
Even if it were established that equitable estoppel might arise because of the silence of German and Harris, another question arises  can their conduct bar Agency from its attack upon the enforceability of foreclosure of the mortgage?
Agency is a governmental agency authorized by the Legislature and created by municipal ordinance. N.J.S.A. 40:55C-1 et seq. The execution of the redevelopment contract and delivery of deeds of conveyance thereunder to Developers was a governmental function.
The doctrine of estoppel is not applied to a governmental agency performing a governmental function to the same extent as it is against individuals and private corporations. 1 A.L.R.2d 349; 19 Am. Jur., sec. 168, p. 820; Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311 (1951). It has been invoked by our courts in order to prevent manifest wrong and injustice. However it is clear that to invoke the doctrine against a municipality the circumstances would have *478 to be extreme. See Vogt v. Belmar, 14 N.J. 195 (1954); Springfield Tp. v. Bensley, 19 N.J. Super. 147 (Ch. Div. 1952) and Johnson v. Hospital Service Plan of N.J., 25 N.J. 134 (1957).
In the instant case plaintiff rests his claim of estoppel upon the fact the Agency's attorney had knowledge that a mortgage of unknown amount was going to be placed on the business area yet made no objection thereto, and that subsequently, after the mortgage was recorded, when German, Agency's attorney, and Harris, Agency's executive director, learned of the recording of the mortgage, no objection was raised.
Ordinarily, a municipality is not estopped by a mistake, unauthorized act, laches, dereliction, or wrongful conduct on the part of a public official, and no estoppel can grow out of dealings with municipal public officers of limited authority where such authority has been exceeded. 1 A.L.R.2d 351; 19 Am. Jur., sec. 168, p. 820.
In Bayonne v. Murphy & Perrett Co., supra, 7 N.J. 298 (1951), officers of the municipality for some years had refused to accept a gross receipts tax from motor bus operators because the amount was too small. When the municipality subsequently sought payment the defense of estoppel was asserted. The court stated, at p. 311:
"The final point, of estoppel against the city's effort to collect taxes, raised by the defendants must be decided adversely to them. Doctrines of estoppel are not applied against the state and its counties and municipal corporations to the same extent as they are against individuals and private corporations. Collection of taxes is a governmental function in the performance of which a city may not be bound or estopped by unauthorized acts of its officers."
In Thornton v. Village of Ridgewood, 17 N.J. 499, 511 (1955), the court restated such rule and further held that laches, being a form of estoppel, should not be applied against a taxpayer who sued on behalf of the municipality to prevent the alleged misuse of municipal funds.
*479 In my opinion, the defendant, Agency, as a governmental agency, occupies a status similar to the municipality itself as related to the doctrine of estoppel asserted against it.
Here the plaintiff suffered no manifest wrong or injustice by reason of German's act such as we found in Vogt v. Belmar, Springfield Tp. v. Bensley, and Johnson v. Hospital Service Plan of N.J., supra.
Thus, in the instant case, if it is argued that German and Harris, by their silence, permitted the mortgage transaction to take place without objection and thereby led plaintiff to believe that its lien could be enforced by a foreclosure proceeding, at best their actions were unauthorized and the product of mistake on the part of such officials. Under such circumstances their action cannot estop Agency from attacking the enforceability of plaintiff's mortgage.

II.
Defendant, Agency, contends that plaintiff was not an innocent mortgagee without notice and that he does not come into this court with clean hands; hence, he is not entitled to the affirmative relief sought in this action.
There is no question but that plaintiff knew this was a redevelopment project and had knowledge directly or through his attorney of all of the terms of the contract entered into between Developers and Agency on October 25, 1955. He knew of the provisions of the contract requiring a reconveyance of the property to Agency in the event the construction of improvements called for were not completed within 32 months from the taking of title.
Feldman was a stockholder and director of both corporations, Developers and Commercial. His brother and business partner, Jerome Farmer  his alter ego , also was a stockholder and director of both corporations in addition to being treasurer of both. Feldman's accounting firm kept the books of both corporations and audited the same.
*480 It is clear that Feldman knew if he placed a mortgage lien on the residential area, no F.H.A. construction mortgages could be obtained thereon unless his mortgage was subordinated. The mortgage transaction thus created was designed to keep the residential area "free and clear."
Feldman also knew that only $148,254.59 of the original $250,000 advanced under the mortgage loan went into the purchase of the business area, and that the remainder of the $250,000 was to pay for the residential area. He also knew that subsequent advancements made by him, totaling $100,000 during the six-month period following the execution of the $450,000 mortgage, were expended to develop the residential tract. No improvements were ever made on the business area.
Feldman knew that on June 11, 1956, when title was acquired to said property, his mortgagor, Urban Commercial, was only a corporate shell, without any assets, income, or any hope of income to pay interest or principal payments on his mortgage or to pay municipal taxes assessed or to be assessed against the property. In addition, he knew on said date that Developers had exhausted all of its $100,000 capital except $5,000.
Plaintiff's admitted objective was "maximum security" for his investment. In his multiple capacity as stockholder and director of both corporations and as mortgagee he exercised firm control over all phases of the operation as the "money man." His plan was to insure against any loss on the mortgage loan by subjecting the business area to the full brunt of his investment in the entire redevelopment project. Thus, if the redevelopment contract was breached by Developers, Agency was in fact to insure him against loss by his lien on the business area. If Agency required reconveyance as a result of Developer's breach of contract, Feldman planned to place Agency on the horns of a dilemma  either take back the business area subject to the lien of all money the plaintiff, as mortgagee, had invested in the development project, or, if Agency determined *481 not to insist upon reconveyance, Feldman would acquire title to the business area upon the foreclosure of his mortgage, thereby rendering the redevelopment plan abortive and giving to Feldman the power to sell or develop the business area unfettered by Agency's plan. Thus, without Agency's knowledge or approval he was insuring his gamble.
The underlying concept of plaintiff's plan is unconscionable. The scheme was designed to have Feldman protected for his lost gamble at the expense of Agency. His idea was that in the event of a debacle, such as in fact did occur, he would be able to take over the business area in fee, free and clear of everybody, including Agency or require Agency, in order to save its redevelopment plan to pay over to plaintiff $392,000, his gamble, to clear a piece of property which had been sold for only $148,254.59.
2 Pomeroy, Equity Jurisprudence (5th ed.), sec. 404, p. 142, states:
"It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience. A court of equity acts only when and as conscience commands; and if the conduct of the plaintiff be offensive to the dictates of natural justice, then whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."
See also Vulcan Detinning Co. v. American Can Co., 70 N.J. Eq. 588, 600 (Ch. 1905); Kem Products v. Levin, 117 N.J. Eq. 560, 564 (Ch. 1935); Atlantic Seaboard Co. v. Borough of Seaside Park, 36 N.J. Super. 142, 157 (App. Div. 1955).
In my opinion, to permit the plaintiff to succeed in his plan to insure his gamble at the expense of Agency, where Agency had no knowledge of the placing of the mortgage, the subsequent advancements thereon plus the added principal of $42,000 caused by plaintiff's granting an extension *482 of his mortgage to Commercial, would be unconscionable. In my opinion plaintiff does not come into this court with clean hands.
In summary, this court finds: that (1) plaintiff's action for affirmative relief to foreclose a mortgage in the principal sum of $392,000 is barred since he does not come into court with clean hands, and (2) plaintiff has not established his defense of estoppel to bar defendant's claim for affirmative relief under its counterclaim.
The decision rendered by Judge Kilkenny on the motions for partial summary judgment granting Jersey City Redevelopment Agency the right to a reconveyance of the property by reason of the default of Urban Developers, Inc. and/or Urban Commercial, Inc. in the performance of the provisions of the redevelopment contract, subject to an equitable lien upon said premises in favor of the plaintiff to the extent of the amount of money actually invested by Urban Commercial, Inc. in acquiring the business area, therefore remains as the law of the case.
Accordingly, judgment will be entered directing a reconveyance of the property to Jersey City Redevelopment Agency, subject to a lien thereon in favor of the plaintiff to the extent of $148,254.59.